### In re Alfred Kostenblatt

[640 A.2d 39]

No. 93-121

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 28, 1994

*David Putter* of *Saxer, Anderson, Wolinsky and Sunshine*, Montpelier, for Appellant Dojka.

*Donald and Bridget Pierce*, pro se, Hoosick Falls, New York, Appellants.

*Alfred and M. Elaine Kostenblatt*, pro se, Troy, New York, Appellants.

*Robert E. Woolmington* of *Witten, Saltonstall & Woolmington, P.C.*, Bennington, for Appellee Tschorn.

*W. Michael Nawrath* of *Whalen and Nawrath*, Manchester Center, for Appellee Town of Arlington.

**Dooley, J.** This is an appeal of an order of the Bennington Superior Court granting summary judgment to appellee, Reginald Tschorn (landowner), in his appeal of a decision of the Town of Arlington Zoning Board of Adjustment (ZBA) to cite him for violation of a zoning permit. The appellants are adjoining landowners (neighbors) and the Town of Arlington,[1] who claim that landowner violated certain express and implied conditions of his conditional use permit in operating a shooting facility. We agree with appellants in part and therefore reverse in part, and affirm the remainder of the trial court's decision.

Landowner's parcel is located in the Murray Hollow section of the Town of Arlington, which was designated, for zoning pur-

---

[1] Alfred and Elaine Kostenblatt originated this proceeding by filing a request with the town land use administrator that landowner be issued a notice of violation. They appealed the administrator's refusal to the ZBA. Before the Bennington Superior Court, the following adjoining landowners were granted intervenor status: Harry Bartle, John Dojka, Howard Grout, Alfred Kostenblatt, Matthew Meagher, and Donald and Bridget Pierce. John Rich, supervisor of the Town of Jackson, New York, which maintains the road into the area involved, was also allowed to intervene.

This appeal was filed by John Dojka, joined by the Kostenblatts and the Pierces. The Town of Arlington filed a brief listing itself as an appellee, although challenging the findings and conclusions of the superior court. We have treated the Town as an appellant.

poses, as part of Arlington's Forest and Recreation District. Within this district, agriculture, forestry and certain private uses are allowed as of right, while all commercial uses with the exception of commercial forestry are prohibited. Recreational uses are allowed only as a conditional use.

In March 1990, landowner submitted a conditional use permit application pursuant to § 6.5.3 of the Arlington Land Use (Zoning) Bylaws. This section designates as a conditional use: "Recreation areas operated by a government unit or a non-profit organization, including hiking trails, bridle paths, and overnight shelters."[2] Pursuant to § 7.1 of the bylaws, the ZBA may approve a conditional use after public hearing if a majority of the ZBA finds the proposed use meets local ordinances, regulations and bylaws, and conforms with the following standards:

1. That it will not emit undue noise, odor, smoke, dust, or in other ways annoy nearby residents or be detrimental to the value of neighboring property.

2. That it will not create dangerous traffic conditions or unduly increase vehicular traffic in the neighborhood.

3. That it is in architectural harmony with neighboring structures.

4. That it is appropriately located with respect to water supply, fire protection, waste disposal and similar facilities, and that such facilities and installations comply with State regulations with respect to the individual building or use.

This appeal centers on the first two conditions, and more particularly, on representations landowner made in addressing these conditions during a public hearing held by the ZBA in May 1990.

At this hearing, landowner discussed his intentions for his Murray Hollow property, and addressed each of the above conditional use standards. He represented that his planned use for the property encompassed a barn for raising pheasants, a separate eight-stall barn for the boarding and possible treatment of

---

[2] The ZBA found this was the operative language. The section also authorizes "[p]rivate recreational areas not operated for profit." As discussed *infra*, this language appears to better fit landowner's circumstances.

horses, and "a hunting and fishing educational facility," which would include a sporting clays field and a pistol and rifle range. He testified that he was a state-certified instructor in hunter firearms safety, and indicated that he was "interested in . . . having a [shooting] facility available where I could take father, mother, son and daughter—family groups—. . . and continue that educational [shooting] process."

Addressing the first conditional use standard, landowner testified that he expected to conduct weekly educational programs running three days per week and involving five shooters per program. Initially, landowner estimated that daily shooting would involve a total of "about 125 shots in a period of a couple of hours," but amended that to "125 rounds" (625 shots) per day over a period of approximately two hours. Addressing the second conditional use standard, he commented that "the maximum carrying capacity of a skeet range or trap ranges are five people. . . . If every member of the family drove a car, I could have a total of five cars as far as parking is concerned." He noted that this level of traffic would match the current level of activity on the road during most weekends, and represent far less traffic activity than the estimated thirty to forty vehicles that travelled the road during deer hunting season.

Following discussion, the ZBA approved landowner's conditional use permit. Although numerous concerns with the facility's operation were discussed, the permit was granted subject to only two conditions written on the face of the permit: (1) that the shooting range operate only from May through October, and (2) that it not operate on Sundays. The permit does not specifically require that the proposed activities be conducted on a nonprofit basis.

Pursuant to § 7.1 of the bylaw, landowner was also required to submit a site plan that showed exactly how the land would be developed and used. Landowner submitted such a site plan and it was approved.

Four months later, in September 1990, landowner filed a new application for a conditional use permit to extend his hours of operation. The application stated that the use of the property was "commercial." After an October public hearing, the ZBA granted landowner's permit, subject to the following: "Conditions revised from original permit to extend shooting to include

Sundays and to allow the facility to operate from April through December except during deer hunting season."

In March 1991, landowner entered into a five-year lease with Orvis Services, a for-profit corporation, effective April 1, 1991. Under the terms of this agreement, he leased the sporting clay-shooting facility to Orvis, and assigned his rights under the conditional use permit to Orvis. Orvis constructed the site improvements to create the facility and operated it from 9:00 a.m. to 5:00 p.m. Fridays and Saturdays and 10:00 a.m. to 5:00 p.m. on Sundays with no daily limit on the number of shooters. The orientation of the facility, as constructed by Orvis, differs from that on the approved site plan.

In June 1991, some of the neighbors formally complained to the Arlington land use administrator following a Memorial Day weekend during which, as they alleged, shotgun pellets fell upon them while they walked along Buck Hill Road, which runs between their property and that of landowner. Neighbors claimed that landowner was exceeding the terms of his conditional use permit by operating a commercial shooting range, creating danger to abutting property owners, and creating an extremely high noise level. Following review, the land use administrator refused to issue a notice of violation, and neighbors appealed to the ZBA.

Following two hearings and a site visit, the ZBA issued a decision on August 7, concluding that although landowner possessed a valid conditional use permit, the permit terms had "been exceeded by the for-profit operation, the number of shots fired per day,[3] the number of cars, the hours and types of operation, and the changes to the approved site plan." The Board ordered landowner, as well as Orvis Services, to cease and desist from operating the sporting clays range as it was constructed, stating that the range could be operated only in

[3] In rejecting an Orvis/Tschorn Act 250 permit application made in June 1991, the District Environmental Commission made more specific findings concerning shooting capacity of the range. It found that in a nine-hour day, a maximum of 330 shooters could go through the course. As each shooter fires 100 shots during a turn through the course, theoretically 33,000 shots could be fired each day. Based on the seven-day-a-week, 180-days-a-year permit request, the commission estimated the theoretical annual maximum to be 5.9 million shots fired.

accordance with landowner's representations to the Board during the May 16, 1990 public hearing, that is, by a not-for-profit organization, as an educational supplement to the Vermont Hunter Safety Course, catering to families and parties of five or less on a weekly basis, and limited to 125 shots fired per day.[4]

In September 1991, landowner appealed the ZBA decision to the Bennington Superior Court, arguing that the ZBA was attempting to enforce unwritten conditions. In two summary judgment decisions, the court agreed with landowner, holding that in the absence of explicit conditions, the ZBA could enforce neither landowner's representations on the nature and intensity of shooting activities nor the bylaw requirement of operation by a "non-profit organization.[5] The Town subsequently moved to amend the judgment, reiterating that the facility was constructed in violation of the site plan and raising a new argument that landowner's operation without an Act 250 permit violated the Arlington bylaw. The motion was denied without opinion, and this appeal followed.

Neighbors and the Town make four arguments on appeal: (1) landowner's representations at the ZBA hearings about the operation of the facilities were binding on him; (2) the requirement of the bylaw that operation be by a nonprofit organization is binding upon landowner; (3) landowner's violation of the site plan supported the ZBA's enforcement action; and (4) operation of the facility without an Act 250 permit was a violation of the Arlington bylaw. We take these claims in order.

We begin with appellants' argument that the landowner was in violation of his conditional use permit because actual use of the shooting facility exceeded the use represented at the May

---

[4] There is some confusion over the level of shooting to be allowed. Although the Board found that the shooting was not limited to "a maximum of five shooters per day firing a total of 125 *rounds*" (emphasis added), or 625 shots, the Board then ordered landowner to limit use to "a total of 125 shots fired per day" (emphasis added). Because we hold that the number of shots per day was not included as a specific condition of operation, we need not determine which is the relevant number.

[5] The second decision was necessary because the court ruled that the ZBA insistence on not-for-profit operation was actually an attack on the validity of landowner's permit. In the second decision, the court ruled that the Town was precluded from attacking the validity of the permit because it failed to appeal from the permit when it was issued.

1990 ZBA hearing. They argue that landowner is bound by the representations as permit conditions. It is undisputed, however, that the only conditions explicitly imposed on landowner's original and amended conditional use permits concern the days and months of operation, and he is operating within these conditions. No conditions concerning number of shots to be fired per day, number of shooters, or number of cars allowed to enter the property were ever explicitly imposed in the permits.

In a case similar to this one, this Court quite clearly held: "Conditions imposed by a zoning board must be expressed with sufficient clarity to give notice of the limitations on the use of the land, and cannot incorporate by reference statements made by an applicant at a hearing." *In re Farrell & Desautels, Inc.*, 135 Vt. 614, 617, 383 A.2d 619, 621 (1978). In *Farrell*, a developer was denied a permit to construct a planned unit development over two parcels of land on the basis that the developer had previously "committed" the first parcel of land "to a use other than the planned unit development." *Id.* at 616, 383 A.2d at 620. While the trial court found that the developer represented at a ZBA hearing that it would not use the first parcel for any building use, this representation was not made a condition of the permit to build on the first parcel. *Id.* at 616, 383 A.2d at 621. In vacating the trial court order upholding the denial of a permit, we refused to "subscribe to the proposition that a formal written [ZBA] order which contains some *express* terms and conditions can also be said to carry with it silent and *unexpressed* terms and conditions." *Id.* (emphasis in original). Without the requirement of explicit conditions, we reasoned that aggrieved parties would have difficulty appealing permits for they would have no notice of all conditions imposed, and similarly, subsequent purchasers would lack notice of all restrictions running with the property. *Id.* at 616–17, 383 A.2d at 621.

We recognize that landowner had the duty to disclose the intended use of his property "truthfully and accurately," *Town of Bennington v. Hanson-Walbridge Funeral Home*, 139 Vt. 288, 294, 427 A.2d 365, 369 (1981), and appellants allege he violated this duty. Nevertheless, we believe the reasons behind *Farrell* continue to be valid and apply in this case. Although we have more familiarity with the operation of zoning laws, it continues

to be true that a zoning board "is a board of laymen, carrying out a proceeding intended to offer redress without insistence on technical procedural rules." *In re Crescent Beach Ass'n*, 126 Vt. 140, 141, 224 A.2d 915, 916 (1966). Thus, despite the fact that our law requires a ZBA to make written findings in ruling on a conditional use application, *Nash v. Warren Zoning Bd. of Adjustment*, 153 Vt. 108, 113, 569 A.2d 447, 450–51 (1989), there are no written findings in this case. Instead, the neighbors urge us to treat the discussion at the ZBA hearing, including the representations of landowner, as findings for purposes of this case. If we accept that view, we impose a difficult if not impossible burden on interested parties to determine applicable regulatory standards.

We also note that we have approved methods that ease any burden in imposition of permit conditions. In *In re Duncan*, we upheld a permit condition that approved a project "pursuant to the plans, specifications, and site plans admitted into evidence" because this condition gave fair notice to interested parties that they had to determine the proposal presented to understand the permit requirements. 155 Vt. 402, 410, 584 A.2d 1140, 1145 (1990). Similarly, in *In re Denio*, we approved an Act 250 permit condition that required the applicant "to complete the project consistent with the Board's findings and conclusions and the approved plans and exhibits." 158 Vt. 230, 241, 608 A.2d 1166, 1172 (1992). Such a condition can be imposed in zoning cases.

For these reasons, we find the *Farrell* rule appropriate and not unnecessarily burdensome. Conditions that are not stated on the permit may not be imposed on the permittee. See *In re Farrell & Desautels, Inc.*, 135 Vt. at 616–17, 383 A.2d at 621. In this case, there are no express conditions on number of shooters, number of shots or number of vehicles. The ZBA may not enforce such requirements on the basis that they are implied.

Landowner argues that the resolution of the implied condition issue also resolves the second issue raised by appellants—whether landowner is limited to nonprofit operation. In landowner's view, the failure of the ZBA to specify nonprofit operation in its permit means that no such restriction is applicable.

There is a major difference between a nonprofit operation requirement and specific conditions on traffic, number of shots fired and the like. The latter are optional to insure the conditional use standards are met. See 24 V.S.A. § 4407(2) (conditional use standards). The former is a minimum requirement for a specific land use within the district. In the context of this case, operation of a recreational area is not permitted on a profit-making basis.

This is not primarily a permit issue. As 24 V.S.A. § 4441 specifically states, where zoning bylaws are in effect "no land development may be undertaken or effected except in conformance with those bylaws." The ZBA found that landowner was operating in violation of the bylaws by conducting a shooting facility as a profit-making venture.

Nor are we convinced that the considerations applicable in *Farrell* are applicable here. The requirements of the zoning bylaw were known by the applicant and are accessible to third parties. The application refers to the applicable bylaw sections. There is nothing in the permit that suggests it has spelled out all the requirements for lawful use in the district. Nor is there anything that suggests that the ZBA has "waived" any requirements of the law, assuming it could ever do that in a conditional use proceeding. It is an unnecessary and unreasonable burden to impose on zoning boards the duty to state all potentially applicable zoning requirements on every permit.

Landowner argues, however, that there should be no violation here because the original permit, and its amendment, specifically authorize a commercial use. In fact, only the applications for the original permit and the amendment refer to a commercial use by checking a box on the application form. The original application covered certain commercial activities, specifically a veterinary complex and a pheasant-raising business. The amended application also refers to commercial use, again by the checking of a box. The sole purpose of the application, however, was to enlarge the days and hours of operation.

We do not believe that the checking of a particular box on the permit application changes our ruling. This was not an action of the ZBA that could fairly be called part of the permit. It was a fair characterization of the original permit application, and the nature of the operation was not involved in the amendment.

Landowner also insists that the requirement is unworkable when the land is owned by an individual. Town bylaw § 6.5.3 actually contains two conditional use authorizations for (a) "[r]ecreation areas operated by a government unit or a non-profit organization"; or (b) "[p]rivate recreational areas not operated for profit." This case probably fits within the second category. We see no difficulty in determining what is required. Landowner is free to argue that he has not violated the requirement in response to any enforcement action the Town may bring.

Finally, on this point, we do not believe that enforcement of the zoning bylaw restriction is a collateral attack on the permit as was found by the trial court. We agree that landowner's permit was not appealed and thus became final and could not be collaterally attacked. See *Levy v. Town of St. Albans*, 152 Vt. 139, 142, 564 A.2d 1361, 1363 (1989). Enforcement of the requirements of the bylaw against landowner is not, however, a collateral attack on the permit.

█ On appellants' third claim, it is undisputed that landowner constructed the shooting facility in a manner different from that shown on the site plan. He promised to bring the facility into compliance, and apparently relying on this promise, the court denied appellants the right to enforce the site plan.

Under § 7.1 of the bylaws, a conditional use permit application must be accompanied by a Site Development Plan, and subsequent "[f]ailure of the development to conform to the Site Plan shall constitute a violation of this Bylaw." Thus, the ZBA was authorized to bring an enforcement action against this violation. See 24 V.S.A. §§ 4441, 4444, 4445. The court was in error in granting landowner summary judgment on this issue. In fact, appellants were entitled to summary judgment. Landowner's intention to comply with the site plan might become relevant in determining relief against him but cannot defeat the ZBA's right to enforce the bylaw.

The final contention is that landowner's failure to secure an Act 250 permit is an actionable violation of the conditional use permit. This claim was raised below only in the Town of Ar-

lington's motion to amend judgment.[6] The issue was never before the ZBA, and, despite numerous opportunities to do so, was never raised to the trial court before it granted summary judgment to landowner. Thus, the trial court had the discretion not to address the issue. See *Osborn v. Osborn*, 147 Vt. 432, 433, 519 A.2d 1161, 1163 (1986) (Rule 59(e) motion to amend gives court occasion to relieve party of unjust operation of the record resulting from court's mistake or inadvertence, but not from party's own fault or neglect).

*The ruling of the Bennington Superior Court granting summary judgment to appellee Reginald Tschorn to prohibit the zoning administrator of the Town of Arlington from proceeding with enforcement of the site plan and of the requirement of the zoning bylaw on nonprofit operation is reversed. In all other respects, the grant of summary judgment is affirmed.*

---

[6] Appellant John Dojka mentioned landowner's failure to obtain an Act 250 permit in a letter filed in opposition to landowner's supplemental motion for summary judgment and in oral argument on the same. However, Dojka's mention of the Act 250 permit denial was made in the context of discussing health and safety concerns with landowner's use. Dojka made no argument that the failure to obtain an Act 250 permit constituted a separate and independent violation of the conditional use permit. Thus, the court was not on notice of such an argument until made in the Town's motion to amend.