STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeals of
  Ernest and Janet Marcelino        Docket Nos. 181-11-97 Vtec and 122-7-99 Vtec

Decision and Order

Appellants Ernest and Janet Marcelino have appealed from two decisions of the Zoning Board of Adjustment (ZBA) of the Town of St. Albans. The first, appealed in Docket No. 181-11-97 Vtec, upheld a Notice of Violation[1] regarding the lakeshore setback of the house constructed on Appellants' property. The second, appealed in Docket No. 122-7-99 Vtec, denied Appellants a variance for the as-built location of their home. Appellants are represented by Edward D. Fitzpatrick, Esq.; the Town is represented by David A. Barra, Esq.; Intervenor Bruce Foerster is represented by Mark L. Sperry, Esq. and Eric M. Knudsen, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows.

On October 17, 1995 Appellants acquired an approximately 96' x 232' (22,272 square foot) lot of land with an existing mobile home on the shore of Lake Champlain in the Lakeshore zoning district of the Town of St. Albans. The mobile home had been located on the property since 1969, thus pre-dating the adoption of zoning. The minimum lot size per dwelling unit is 40,000 square feet; a single family dwelling is a permitted use.

At the same time, Appellants also acquired a neighboring property with other relatives. The neighboring parcel and the subject lot had been part of a single lot

_____

[1] We note that no enforcement action has been brought, and no injunctive relief is sought from this Court.

1

approximately 192' x 232' in area.  Prior to acquiring the two properties, Appellants spoke with the then Zoning Administrator Ernest Levesque to inquire whether the two lots would be considered separate building lots.  That issue is not now before the Court.  Appellants also told him prior to acquiring the properties that they planned to remove the existing mobile home and replace it with a house.  He informed them, correctly, that they could replace the mobile home with another home in the same location provided they did so within 18 months.  He also informed them, correctly, that if they were going to build in another location, they would have to meet the setback requirements of the ordinance.  Appellants did not inquire of Mr. Levesque regarding what setbacks were required for new rather than replacement construction before they purchased the lot.  Appellants did not acquire or read a copy of the Town's Zoning Bylaws prior to purchasing the property.

Appellants' property boundary on the lake side of the lot is measured to the low water mark.  Accordingly, any tax appraisals or dimensional measurements related to the property boundaries are measured to the low water mark.  On the other hand, while the dimensional requirements of the Zoning Bylaws in the Lakeshore district require a 25-foot setback to the property boundaries, they also require a more restrictive 75-foot lakeshore setback to the mean water mark of the lake, defined as elevation 95.50 feet above sea level.  This requirement is clearly stated in the Zoning Bylaws.  §315(3).

The existing mobile home had an approximately 9' x 15' entrance porch or addition on its easterly side, away from the lake.  The mobile home, exclusive of the entrance porch, was approximately[2] 12½ feet wide and 56 feet long, and was oriented with its long side facing the lake.  The area of the footprint of the original mobile home was approximately 828 square feet.  The mobile home, exclusive of the entrance porch, was located on the property  entirely within (that is, westerly of) the 75-foot lakeshore setback, with its northeast corner touching that line.  Measured perpendicularly to the Lake Champlain mean water mark, the mobile home's northwest corner was 63 feet from the mean water mark and its southwest corner was 56 feet from the mean water mark.

---

[2] Measurements of the mobile home not presented in testimony are measured by scale from Intervenor's Exhibit 6.

2

Thus at the time Appellants purchased the parcel, it was conforming as to use. It was non-conforming as to lot size[3], and the location of the mobile home also made it a pre-existing non-complying structure with regard to the lakeshore setback. The parcel was therefore subject to §321 of the Zoning Bylaws. Under §§320 and 321, the mobile home could be replaced by a dwelling in the same footprint within 18 months of its removal, and could be enlarged or extended within the lakeshore setback area only with ZBA approval of a variance. Of course, new construction to the east of (that is, complying with) the lakeshore setback line would have required only permit approval of the Zoning Administrator.

An easement for an electric utility line passes across the property, along and to the west of the gravel drive. It turns to the east in front of the present house or what was the porch of the mobile home, and continues off the property at its easterly boundary. The easement limits the extent to which the house could be located easterly of the lakeshore setback line within the other constraints of the property. Such an easement for a utility line can be relocated by agreement with the Central Vermont Public Service Corp. (CVPS). Appellants applied in June of 1997 to relocate the easement and utility line and were granted permission, but did not act on that application, which has since expired.

---

[3] If considered together with the property Appellants acquired with their relatives, the combined lot measures approximately 192' x 232' (44,544 square feet) and would be conforming as to lot size, but would only allow the construction of a single dwelling.

3

Appellants had the mobile home removed. Appellants did not acquire or read a copy of the Town's Zoning Bylaws pertaining to their property prior to removing the mobile home on the property[4].

On October 18, 1995, the day after acquiring the property, Appellants applied for and obtained a septic system permit for the parcel. Its location was approved by the Town's Health Officer, Dean Pacquette, who informed them that their septic system had to be at least 100 feet from the lake. On October 25, 1995, Mr. Pacquette approved the septic system as installed. The septic tank is located approximately 22 feet easterly of the mobile home's former location, and the leach field is located approximately 15 feet easterly of the septic tank, on the easterly side of the gravel drive serving the property. Appellants did not acquire or read a copy of the Town's Zoning Bylaws pertaining to their property prior to installing the septic tank and field on the property.

Between the time of installation of the septic system in October of 1995 and the time they applied for a permit for construction of their house in October of 1996, Appellants did not acquire or read a copy of the Town's Zoning Bylaws pertaining to their property, even to determine whether they needed to apply for a permit to the Zoning Administrator or for other approval or a variance to the ZBA. In August of 1996, Intervenor Foerster and Appellants met at the property and discussed the fact that Appellants intended to build a house and its general location, but did not discuss the specific lakeshore setback requirements. Intervenor Foerster built his own house in compliance with the 75-feet-from-mean-water lakeshore setback.

On two occasions prior to October 4, 1996, Appellants met with Zoning

---

[4] The evidence does not reflect when the mobile home was removed, but all parties' references to it suggested that it was removed early in Appellants' ownership of the property. If it was removed prior to the work on the septic system, then the 18-month period expired approximately at the end of April, 1997. If it was removed later than that, the 18-month period would have been correspondingly extended.

Administrator Levesque. On at least one of those occasions he suggested that they obtain a copy of the Zoning Bylaws; and they told him they were doing so. On October 4, 1996, Appellants applied to the Zoning Administrator for a permit to construct a house on their lot. The form states that "All construction to be completed in accordance with the Zoning Ordinance of the Town of St. Albans and State of Vermont, except for variances requested."

Zoning Administrator Levesque accepted the application although it was missing information required by the form and it did not contain a plot of the lot and building improvements. He told them to bring in the sketch plan later, as they had not then decided where to place their structure. The form required the applicant to show the width of the front, side and rear yards, but did not require any specific information for lakeshore lots, and did not require the applicant to depict the mean water mark of the lake. Appellants' application and permit stated that it was for "construction of a single family home that meets setbacks. Septic system is installed." That language was placed on the form by the Zoning Administrator, prior to its being signed. The form stated above the signature line that "The undersigned applicant certifies that the information above is correct." Appellant Janet Marcelino signed the application.

Zoning Administrator Levesque issued the permit at the time of the application. It was not appealed. Intervenor Foerster saw the permit, but did not appeal it because it required the construction to meet the setback requirements. The permit was valid for a year from October 19, 1996. Only the conditions written in a permit or a ZBA decision are enforceable; neither the applicant nor the town can alter or add to those conditions by their oral representations. In re Farrell & Desautels, Inc., 135 Vt. 614, 617 (1978); In re Kostenblatt, 161 Vt. 292, 298 (1994). Among other reasons, the Supreme Court has explained that "[w]ithout the requirement of explicit conditions, . . . aggrieved parties would have difficulty appealing permits for they would have no notice of all conditions imposed, and similarly, subsequent purchasers would lack notice of all restrictions running with the property." Id., 161 Vt. at 298. That permit was not appealed, and cannot be challenged. Levy v. Town of St. Albans Zoning Bd. of Adjustment,152 Vt. 139, 142 (1989); Graves v. Town of Waitsfield, 130 Vt. 292, 295 (1972).

5

After being issued their permit, Appellants did not acquire or read a copy of the Town's Zoning Bylaws pertaining to their property, even though Ms. Marcelino had certified the correctness of the information on the permit application that the house would be constructed "that meets setbacks," and even though the permit form stated that all construction was to be completed in accordance with the Town's Zoning Ordinance except for variances requested. Their failure to ascertain the requirements of the ordinance as to setbacks was not reasonable under the circumstances.

Rather, after being issued their permit, Appellants told Zoning Administrator Levesque that they did not know what the zoning setback requirements were. He told them that the setbacks were 25 feet from the sides, 40 feet from the road, and 75 feet from the lake. He told them that the lakeshore setback was 75 feet, but incorrectly told them that it was measured from their lakeside property line (the low water mark). It was not reasonable of them to accept the Zoning Administrator's representation as to the requirements of the Zoning Bylaws, rather than to read the Zoning Bylaws for themselves, as the Zoning Administrator is without authority to vary the provisions of a written permit by his oral representations, and the written permit obligated Appellants to comply with all setbacks and all other requirements of the Zoning Ordinance independently of any representations of any town official.

At the time of receiving the building permit, Appellants were still entitled to build within the lakeshore setback in the footprint of and to the extent that the mobile home had occupied the lakeshore setback, as 18 months had not elapsed from the time they had removed the mobile home. §320(c). At that time, Appellants were not entitled to extend the nonconforming structure towards the west within the lakeshore setback, even with Board of Adjustment approval of a variance under §321, because the "aspect or degree of non-compliance" may not be increased. At that time, Appellants were entitled to extend the nonconforming structure towards the east but within the lakeshore setback, but only upon Board of Adjustment approval of a variance under §321. At that time, Appellants were allowed to build to the east of the lakeshore setback, but a variance would still have been required for such construction for a different reason: because the lot is undersized.

Appellants did not begin to build under their permit until May of 1997. That date was

6

within the one-year validity dates of the permit, but may have been beyond the 18-month period for replacement of a non-conforming use under §320(c) (see footnote 4 above). They planned a larger house, 1683 square feet in area, with an extensive porch on the lake side of the house. The new house extends approximately seven feet to the west of the westerly face of the former mobile home, and the new deck extends approximately nineteen feet to the west of the westerly face of the former mobile home.

Because Appellants' advice from Zoning Administrator Levesque had been oral, prior to beginning construction, Appellants' contractor wisely recommended that Appellants provide a sketch of the property to the new Zoning Administrator Brian Bigelow, and that they request some type of written acknowledgment of the proposed location for the new structure.

Appellants provided a sketch to Zoning Administrator Bigelow on May 27, 1997. As of this date the location of the proposed house had been staked out and some site work had been done, but no construction had begun and the foundation had not been poured. Two versions of that sketch were submitted in evidence. Appellants' Exhibit E reflects marginal notations[5] written on a copy of the sketch given to Appellants that day by Zoning Administrator Bigelow; Intervenor's Exhibit 5 reflects marginal notations[6] written on the copy of the sketch retained in the file by Zoning Administrator Bigelow. The most that Zoning Administrator can be said to have approved or ratified on May 27, 2000, by the copy of the sketch returned to Appellants, is that they were bound by the terms of their October 4, 1996 permit, and that from the sketch, the side yard setbacks appeared to be adequate. Zoning Administrator Bigelow did not advise Appellants to proceed to construction or to refrain from proceeding to construction, nor did he advise them to apply for a variance.

This sketch does not show or purport to show the mean water mark of the lake. Rather, it shows the side setbacks as 25 feet on each side; it shows a distance of 10 feet

---

[5] Stating: "Permit issued 10/4/96; side yards adequate; encouraged to investigate flood ins[urance]."

[6] Stating: "Dropped off 5/27/97."

from the front of the house to the power line; it shows the house as 46 feet long and 28 feet wide, with an additional ten feet of enclosed width towards the lake on the southwest corner of the house, plus a 10-foot-wide unenclosed deck surrounding that extension only. A measurement is shown of 30 feet from the deck to a line marked as the "bank" of the lake, and a measurement of 82 feet from the deck to a line shown out in the lake but not identified as either a property boundary, or the low water mark, or the mean water mark. The house as constructed was 46 feet long, but extended the additional ten feet of enclosed width across the westerly side of the house to include an enclosed porch, so that it was 38 feet wide, with an approximately 12-foot-wide deck extending further to the west from that point.

Construction on the foundation for Appellants' house commenced after their May 27, 1997 visit to Zoning Administrator Bigelow, some time in early June of 1997. By June 21, 1997, they had completed the foundation and cellar walls. With the prior site work, the foundation and cellar walls represented 25% to 30% of the cost of construction. On June 28, 1997, Appellants received a letter dated June 27, 1997 from Zoning Administrator Bigelow, informing them that he had been requested to investigate the improvements being made on their property in relation to their permit and application, and requesting a meeting on-site to discuss the matter. The letter advised them that he would be reporting informally to the ZBA at its meeting on July 10, 1997. The letter was not a notice of violation and did not require them to stop work. By that time the house was substantially framed and the work done on the house represented approximately 50% of the cost of construction. At that time, it was not reasonable for them to have continued with construction knowing that the status of their permit was in question. As the issue of damages does not arise in the present appeal (see text at footnote 7), we do not now determine whether damages could have been mitigated by stopping construction either at the foundation stage or at the framing stage, that is, at what stage it would have become more expensive to move the structure. Appellants' builder informed them that after the framing stage, it would not be substantially more expensive to move a completed structure than a framed-in structure.

Appellants met at the site with Zoning Administrator Bigelow on June 30, 1997, at which time he explained to them that the setback to the lake was improper and that it

8

should have been measured from the mean water mark. He told them that they would have to appear before the ZBA at its July 10, 1997 meeting. He did not tell them to stop construction; rather, he acknowledged that it would be a hardship for them to stop construction. As of the July 10, 1997 ZBA meeting, they stopped construction, but later installed the windows and roof to protect the structure from the weather. As of the Notice of Violation on July 29, 1997, the house was 85% to 90% completed.

Docket No. 122-7-99 - Variance Application

In order to qualify for a variance, Appellants must meet all five requirements of §305:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of this bylaw in the neighborhood or district in which the property is located;

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this bylaw and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

(3) That such unnecessary hardship has not been created by the appellant;

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of this bylaw.

Appellants' parcel meets only subsection (4) of these five provisions. As it must meet all five in order to qualify for a variance, the requested variance must be denied.

The small size of the lot is not peculiar to this property, but is common to other neighboring lots, and its narrowness was created by Appellants in the transaction by which they acquired the property. The property could have been developed in strict conformity with the bylaw, either by leaving the mobile home in place, or by building a house no more nonconforming than the mobile home had been. Appellants created the hardship in part by purchasing an undersized lot after the Zoning Bylaws had been adopted, by building a house westerly of the preexisting mobile home, and by commencing construction of their

9

foundation after the issue of approval of the house location had been raised in May of 1997 by their contractor. If granted, the variance would not alter the essential character of the neighborhood or district, which has preexisting homes located as close to the shoreline, nor be detrimental to the public welfare, but it would permanently impair the appropriate use of Intervenor's adjacent property by interfering with the view Intervenor would otherwise have had of the Lake and foreshore. However, Intervenor did not present evidence from which the Court could find that such impairment is substantial, as required by subsection (4). The variance, if authorized, would not be the minimum variance that would afford relief, as a house could have been constructed entirely to the east of the westerly face of the former mobile home, which would have required a more minor variance: only for the small strip of land between the easterly face of the former mobile home and the lakeshore setback line.

Docket No. 181-11-97 Vtec - Appeal of Notice of Violation

The issuance of the building permit to Appellants in 1996 was final. Levy v. Town of St. Albans Zoning Board of Adjustment, 152 Vt. 139, 142 (1989); Graves v. Town of Waitsfield, 130 Vt. 292 (1972). A Town is, however, entitled to enforce against construction or operation that extends beyond the scope of a permit. Town of Bennington v. Hanson-Walbridge Funeral Home, 139 Vt. 288 (1981). Appellants' construction extends beyond the scope of their permit as to the lakeshore setback.

Appellants argue that the Town should be estopped to enforce the lakeshore setback, based on the representations of then-Zoning Administrator Levesque as to the setback measurement method's being from the low water mark. However, because the zoning application and permit explicitly bound Appellants to comply with the terms of the zoning ordinance, and because the permit stated that the house would comply with setbacks, it was not reasonable for Appellants to persist in relying on those representations to the exclusion of even obtaining and reading the Zoning Bylaws. After the meeting with Zoning Administrator Bigelow on May 27, 1997, before the foundation work had begun, Appellants knew that their side setbacks were satisfactory, but that the Zoning Administrator would need to investigate other issues further, including the lakeshore

10

setback. After that date, it was not reasonable for Appellants to persist in relying on Zoning Administrator Levesque's representations to the exclusion of even obtaining and reading the Zoning Bylaws.

As of May 27, 1997, before the foundation had been begun, and certainly as of June 30, 1997, when the house was only framed and approximately 50% completed, Appellants' own actions in commencing and continuing with construction contributed to the problem for which they now seek estoppel of the Town. Town of Bennington v. Hanson-Walbridge Funeral Home, 139 Vt. 288, 294 (1981). Therefore they have not made out the elements of estoppel as to the Notice of Violation.

Based on the foregoing, it is hereby ORDERED and ADJUDGED in Docket No. 122-7-99 Vtec that Appellants do not qualify under §320 or 321 for a variance from the lakeshore setback requirements of the zoning ordinance, and it is hereby DENIED. It is hereby ORDERED and ADJUDGED in Docket No. 181-11-97 Vtec that Appellants constructed their home in violation of their 1996 building permit as to the lakeshore setback, that the Notice of Violation is therefore upheld.

As no enforcement action has been filed, we do not act on any injunctive relief. We note that, in an enforcement action, the Town could seek several levels of injunctive relief: to remove only those portions of the structure within the lakeshore setback and to the west of the westerly line of the former mobile home location; or also to remove those portions of the structure within the lakeshore setback but to the east of the westerly line of the former mobile home location. With regard to estoppel, all that the present decision resolves is that the Town is not required by the principles of estoppel to allow Appellants to leave their house in its present position, that is, to grant them a permit or a variance for the house in its present location. If Appellants are required to remove the deck or move or reconstruct the house, it will be open to them to argue that the Town should be liable to compensate them for some part of the costs of doing so. Any questions of whether the Town may be liable[7] to Appellants for any of the costs of that removal are not presented in the present

---

[7] As in My Sister's Place v. City of Burlington, 139 Vt. 602 (1981), Appellants have

case, and may be within the jurisdiction of the Superior Court rather than the Environmental Court.

Dated at Barre, Vermont, this 19th day of July, 2000.

_____
Merideth Wright
Environmental Judge

---

not been given the benefit of the incorrect statements of the Zoning Administrator. However, this does not resolve whether Appellants may be entitled to some compensation for the reconstruction of the foundation or for some portion of moving or reconstructing the house. In My Sister's Place, permission to construct the restaurant in the wood-core building was withdrawn, despite the incorrect representations of the fire inspector, because of fire safety requirements, but the City was held liable to compensate the restaurant owner for the monies expended in reliance on that incorrect advice.