## STATE OF VERMONT

## SUPERIOR COURT - ENVIRONMENTAL DIVISION

| | | |
|---|---|---|
| Nancy Sullivan and Leonard Schiavone, | } | |
| Petitioners, | } | |
| | } | |
| v. | } | **Docket No. 125-7-09 Vtec** |
| | } | (private zoning enforcement action) |
| Lakeview Inn Enterprises, LLC, and | } | |
| Dov'e Enterprises, LLC, | } | |
| Respondents.[1] | } | |
| | } | |

### Decision on Multiple Motions

Petitioners Nancy Sullivan and Leonard Schiavone ("Neighbors") have filed a petition for zoning permit enforcement, pursuant to 24 V.S.A. § 4470(b), alleging that Lakeview Inn Enterprises, LLC and Dov'e Enterprises, LLC are violating the terms of Zoning Permit No. 1997-28 by serving dinner to the general public at the Lakeview Inn, which is located at 295 Breezy Avenue in the Town of Greensboro. Neighbors seek an order requiring that Dov'e Enterprises, LLC and Lakeview Inn Enterprises, LLC cease serving dinners or evening meals at the Lakeview Inn for all times that Permit No. 1997-28 is in effect.

Neighbors are represented by Daniel P. Richardson, Esq.; Lakeview Inn Enterprises, LLC is represented by Norman C. Williams, Esq.; Dov'e Enterprises, LLC, is unrepresented;[2] the Town of Greensboro ("Town") is represented by Sara Davies Coe, Esq.; Interested Person Sigfrid Lonegren is represented by Robert M. Fairbanks, Esq.

Three motions are currently pending before the Court. Both Neighbors and Lakeview Inn Enterprises, LLC ("Respondent") have filed a motion for summary judgment, contending that they are entitled to judgment as a matter of law. Neighbors argue that Permit No. 1997-28 does not authorize Respondent or Dov'e Enterprises, LLC to serve dinner at the Lakeview Inn, while Respondent argues that the Permit contains no conditions prohibiting dinner services.

---

[1] The caption for this case has been changed from In re Lakeview Inn Condition Use Enforcement to more accurately reflect that this is an enforcement action brought by Neighbors Nancy Sullivan and Leonard Schiavone against Respondent Lakeview Inn Enterprises, LLC, and Dov'e Enterprises, LLC, pursuant to 24 V.S.A. § 4470(b).

[2] In its Answer to the Petition for Zoning Enforcement (filed Sept. 9, 2009), Respondent identified Dov'e Enterprises as "the caterer for Lakeview Inn, which is owned and managed by Respondent." Respondent's Answer at ¶ 5. No other representation has been made about or on behalf of Dov'e Enterprises, LLC in this proceeding.

Respondent has also filed a motion for sanctions, arguing that Neighbors lack a good faith basis for this enforcement Petition under existing law because Permit No. 1997-28 contains no express conditions prohibiting dinner service. Neither Dov'e Enterprises, LLC, nor the Town, nor Mr. Lonegren have chosen to file a response to the pending motions, which are now ripe for review.

**Factual Background**

For the sole purpose of putting the pending motions into context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1. The Lakeview Inn is on a 1.83-acre parcel of land located at 295 Breezy Avenue in the Village Zoning District of the Town of Greensboro.

2. Lakeview Inn Enterprises, LLC ("Respondent") currently owns and manages the Lakeview Inn. Dov'e Enterprises, LLC is the caterer at the Inn and may be a wholly-owned subsidiary of Respondent. Both entities are Vermont limited liability companies.

3. Neighbors own and reside on property abutting the Inn; their residence is located at 255 Breezy Avenue. Neighbors have lived at this location year-round since 1986.

4. In the summer of 1997, the predecessor-in-title to Respondent initiated proceedings to secure approval to renovate and operate the Lakeview Inn. The record before us is somewhat unclear, as there are references to the property previously being used as an inn, but at the time of the 1997 application, the property was either "vacant"[3] or being used as a private residence.

5. As indicated on the four-page zoning permit application, which is hereinafter referred to as the "1997 Zoning Permit Application," the then-applicants sought approval to operate the Inn and add a fire escape and screened porch, raise the roof, and add some windows. 1997 Zoning Permit Application, at 2 (copy supplied as Exhibit 1). The Permit Application does not elaborate as to how the Inn would be operated.

6. The Zoning Administrator received the 1997 Zoning Permit Application on July 8, 1997, and then referred it to the Planning Commission for site plan review and to the Zoning Board of Adjustment ("ZBA") for conditional use review. Under the regulations then in effect, operating a hotel required conditional use approval and all commercial uses required site plan approval. Town of Greensboro Zoning Regulations art. III, 4(a) and art. IX, 1 (Mar. 4, 1997).

---

[3] See the 1997 Zoning Permit Application, at 2 (copy supplied as Exhibit 1).

7.      Although the Planning Commission's decision is not in the record thus far provided to us, it appears that the Planning Commission approved the proposed site plan. A notation at the end of the 1997 Zoning Permit Application references an approval signature on the site plan sketch, which the Chair of the Planning Commission signed on September 9, 1997. Id. at 4. This decision was not appealed, but Neighbors maintain that they received no notice of a public hearing on the site plan application.

8.      After providing notice of the conditional use application on July 16, 1997, the ZBA held a public hearing on the application on July 30, 1997.

9.      Neighbors appeared at the public hearing to express concerns about potential noise at the Lakeview Inn, requesting restrictions be placed on outdoor amplified noise. Neighbors allege that the then-applicants represented at the hearing, in response to a question by a ZBA member, that no dinner service would be provided at the Inn.

10.      The ZBA's hearing is memorialized in a document entitled "Conditional Use Hearing," which contains the hand-written notation "Zoning Minutes" at the top of the first page; a copy of these Minutes was supplied by Respondents as Exhibit 2. These Minutes identify those who were present, the description of the proposal, and the substance of the discussions, and are hereinafter referred to as "1997 ZBA Minutes."

11.      The 1997 ZBA Minutes provide a more precise description of the proposed use. The following is typed in a section of the Minutes entitled "Description of the Project:"

> [The owners] described their plans for the inn, which will eventually include a bakery, deli/café, space for retail business and banquet/reception facilities. Inn will be open seven days a week and will have 11 bedrooms upstairs and a handicap-accessible bed and bath downstairs. Breakfast and lunch will be available but no evening meals or full-course dinners. The owners hope to start providing the above services this fall with the exception of overnight occupancy scheduled for next spring.

1997 ZBA Minutes, at 1.

12.      The 1997 ZBA Minutes provide a one-sentence synopsis of the discussion, explaining that the then-owners gave assurances that they would do their best to control noise from wedding receptions and other group gatherings. Id. at 2.

13.      The 1997 ZBA Minutes also contain a section entitled "Conditions Imposed." The text under this section discusses the ZBA's voting results; the members voted unanimously in

deciding that operating the Inn would not adversely affect any of the conditional use criteria. Id. This section contains no indication that the ZBA decided to impose any specific conditions.

14. The ZBA's decision to grant conditional use approval as of July 30, 1997, was memorialized on the face of the 1997 Zoning Permit Application, thereby transforming the application form into Zoning Permit No. 1997-28.

15. Both the Chair of the Planning Commission and the Chair of the ZBA signed Zoning Permit No. 1997-28 on its face. 1997 Zoning Permit Application, at 1. These approvals are contained in a dark box at the top of page one, identified "For Administrative Use Only." Next to both signatures is a checkmark in the box identified as "Approved." No checkmark appears in the adjoining box, next to the text "Approved with Conditions," thereby suggesting that the proposed renovation and operation of the Lakeview Inn was approved without express conditions.

16. Zoning Permit No. 1997-28 and the 1997 ZBA Minutes were thereafter distributed to those in attendance at the July 30 public hearing. Neighbors received these materials and represent that they did not appeal the ZBA's decision because they understood the Minutes to indicate that no dinner services or evening meals would be provided at the Lakeview Inn. Neighbors concluded that such a restriction would adequately protect their interest in avoiding objectionable outdoor noise.

17. Following these distributions, the Chair of the ZBA attempted to amend the ZBA Minutes. On September 19, 1997, some fifty days after issuance of the Minutes and Permit, the ZBA Chair drafted a one-page, handwritten document entitled "Zoning Board of Adjustment Amended minutes, Amendments 9/19/97 Due to oversight in original dated 7/30/97." Respondent provided a copy of this document as Exhibit 3. This document, which is hereinafter referred to as the "Amended 1997 ZBA Minutes," states that it was intended only to elaborate on issues discussed at the meeting and already memorialized in the original Minutes. It states in pertinent part:

> MEALS: Initially, [owners] are not planning to be open evenings for three-course dinners. They'd like to leave that option open, if they need to, or get lots of business, they may operate more like a full-fledged restaurant. Mainly, their entire aim is obviously to operate in the black, not the red.

Amended 1997 ZBA Minutes, at 1. The Amended 1997 ZBA Minutes are signed by the ZBA Chair, but Neighbors represent that these Amended Minutes were never sent to those in

attendance at the July 30 public hearing. Neighbors further maintain that they did not receive notice of the Amended Minutes from the Town until January 2004.

18. Between 1997 and 2004, the Lakeview Inn was operated by Respondent's predecessors without serving dinners or evening meals; it was closed most evenings at 6:30 or 7:00 p.m.

19. Sometime before 2004, Lakeview Inn Partners, LLC purchased the property, through a Mr. Kevin McNamara.

20. On January 22, 2004, Mr. McNamara applied for a zoning permit to renovate the interior of the Inn in order to add dinner service. On the application form, Mr. McNamara sought approval to expand the kitchen, install a service bar, and finish an attached apartment. 2004 Zoning Permit Application, at 2 (copy supplied as Exhibit 5). Mr. McNamara also indicated on the application that he intended to use the renovations for "adding dinner service" and a residential apartment. Id.

21. On February 4, 2004, the Zoning Administrator determined that a zoning permit was not required for the proposed construction and use. On top of the 2004 Zoning Permit Application, she noted: "Interior renovations permit not required. However, as this is a business, State must approve septic." Id. at 1. A Memorandum of Municipal Action thereafter issued in May 2004, a copy of which was supplied as Exhibit 6. Neighbors maintain that they were not notified of either the application or the Zoning Administrator's determination until January 2010.

22. Shortly after the Zoning Administrator rendered her determination, Lakeview Inn Partners, LLC began offering evening meals, full-course dinners, and evening events at the Lakeview Inn. Neighbors immediately noticed the increase in evening activity and noise at the Inn. Neighbors began their efforts to notify Lakeview Inn Partners, LLC of what Neighbors understood to be unpermitted uses. However, this owner soon went out of business, thereby eliminating the alleged adverse impacts upon Neighbors from dinner service being offered at the Inn.

23. On February 18, 2009, Respondent took ownership of the Lakeview Inn.

24. Neighbors allege that on April 9, 2009, Respondent obtained from the Town a liquor license for the restaurant at the Inn. Neighbors also allege that Respondent thereafter began advertising a dinner to be held at the Inn on June 7, 2009. Both the Town and Respondent deny that a liquor license was obtained on that date, but Respondent admits advertising the dinner.

Respondent further admits that it has held additional dinners at the Lakeview Inn, and it intends to continue to host regular dinners, offered to the general public.

25. In May 2009, Neighbors sought to convince the Zoning Administrator to initiate an enforcement action against Respondent for what Neighbors regarded as a violation of Zoning Permit No. 1997-28. When the Administrator did not immediately abide by their request, Neighbors filed their Petition for enforcement with this Court.

## Discussion

By their Petition for enforcement, Neighbors seek an order from the Court requiring Respondent and Dov'e Enterprises, LLC to cease serving dinners or evening meals at the Lakeview Inn, alleging that Zoning Permit 1997-28 prohibits the service of evening dinners. Respondent responds in opposition, maintaining that neither Zoning Permit 1997-28 nor the ZBA Minutes contain any express prohibition. Respondent argues that a permit condition is not enforceable unless it is explicit on the face of the permit, and since the record contains no such explicit prohibition against dinner service, Neighbors' Petition is so lacking in merit that the Court should impose sanctions upon Neighbors, pursuant to V.R.C.P. 11.[4]

In the alternative, Respondent contends that the Zoning Administrator in 2004 specifically authorized dinner service at the Lakeview Inn to the general public when she determined that no permit was necessary to make renovations and add dinner service at the Inn. Both parties have filed a motion for summary judgment on the issue of whether Respondent and Dov'e Enterprises, LLC are authorized to serve dinner at the Lakeview Inn.

Our review of the pending cross-motions must begin with the reminder that summary judgment is appropriate only "when there are no genuine issues of material fact and, viewing the evidence in a light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." In re Carter, 2004 VT 21, ¶ 6, 176 Vt. 322; V.R.C.P. 56(c). "When both parties move for summary judgment, each is entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." City of Burlington v. Fairpoint Commc'ns, 2009 VT 59, ¶ 5 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)). We apply these standards to the issue raised by the pending motions.

---

[4] The Rules of Civil procedure are made applicable to this Court by our own Procedural Rules. V.R.E.C.P. 5(a)(2).

**I.      Does Permit No. 1997-28 prohibit dinner service?**

In determining whether Zoning Permit No. 1997-28 prohibits the service of dinner at the Lakeview Inn, we must first look at what permit conditions are enforceable. The guiding principle in such a review is that "[c]onditions imposed by a zoning board must be expressed with sufficient clarity to give notice of the limitations on the use of the land." In re Farrell & Desautels, Inc., 135 Vt. 614, 617 (1978). To wit, the Supreme Court has held that representations made to the zoning board by the applicant/landowner are not enforceable unless expressly incorporated as conditions of the permit. In re Kostenblatt, 161 Vt. 292, 299 (1994). Similarly, the zoning board's findings of fact may not function as implied permit conditions. In re Stowe Club Highlands, 164 Vt. 272, 276 (1995). They must be incorporated as conditions with language sufficient to provide the requisite notice. In re Byrne Trusts NOV, No. 150-7-08, slip op. at 14 (Vt. Envtl. Ct. July 15, 2009) (Durkin, J.) (rejecting the phrase "based on the facts above" as effectively incorporating the factual findings as express conditions). The basic rule is that "[c]onditions that are not stated on the permit may not be imposed on the permittee." Kostenblatt, 161 Vt. at 299.

The skepticism toward implied permit conditions is rooted in the principle of notice. "Without the requirement of explicit conditions, . . . aggrieved parties would have difficulty appealing permits for they would have no notice of all conditions imposed, and similarly, subsequent purchasers would lack notice of all restrictions running with the property." Id. This would "impose a difficult if not impossible burden on interested parties to determine applicable regulatory standards." Id. To strike a balance between clarity for interested persons and any burden on the zoning board in specifying conditions, the Supreme Court approved two methods of incorporating representations or factual findings as express permit conditions. Id. A board could condition permit approval "pursuant to the plans, specifications, and site plans admitted into evidence." Id. (quoting In re Duncan, 155 Vt. 402, 410 (1990)). A condition could also require the applicant "to complete the project consistent with the Board's findings and conclusions and the approved plans and exhibits." Id. (quoting In re Denio, 158 Vt. 230, 241 (1992)). No such reference language is included in the Permit here.

The Supreme Court has not announced a standard for properly conditioning a permit on the factual findings or landowner representations without such notice provisions, but the guiding

7

principle is to provide all interested parties fair notice of what can and cannot be done with the land in question. Byrne Trusts, No. 150-7-08, slip op. at 14 (citing cases).

Here, there is no dispute that Zoning Permit No. 1997-28 lacks any express conditions. The Chair of the Planning Commission, as well as the Chair of the ZBA, placed a checkmark in the box labeled "Approved," not the box labeled "Approved with Conditions." We regard this as a representation on the face of the Permit that the approval was rendered without conditions. Neighbors would have us read conditions into the Permit by virtue of language from the 1997 ZBA Minutes. We have not been made aware of the legal authority for such a proposition, and our independent research has revealed none. Furthermore, were we to assume the authority to create such precedent, the text of the Minutes does not support the legal conclusion that Neighbors espouse.

The 1997 ZBA Minutes note that the then-owners of the Lakeview Inn did not intend to immediately serve evening dinners, but goes on to note that "[t]he owners hope to start providing the above services this fall with the exception of overnight occupancy scheduled for next spring." 1997 ZBA Minutes, at 1. It is unclear from the record before us whether the then-owners/operators of the Lakeview Inn were simply stating that they would not begin any commercial operations until the fall of 1997, or were requesting authority to offer evening meals to the public in the future. But we conclude that one assessment of these facts cannot be disputed: that the then-applicants did not pledge for themselves and their successors that evening meals would never be offered to the general public at the Lakeview Inn. Reading the full text of the ZBA Minutes after the heading "Description of Project" cannot support a legal conclusion that an implied permit condition was established prohibiting evening dinners; we reach this conclusion, even after viewing the applicable record and affidavits in a light most favorable to Neighbors.

Neighbors further assert that their Petition for enforcement has been brought both for enforcement of the conditions contained in Permit No. 1997-28 (which we have now ruled contains no express conditions), but also based upon the legal theory that the authority to develop and use land is limited by the representations made in a land use application. Neighbors correctly state this independent legal theory, as articulated by our Supreme Court in Town of Bennington v. Hanson-Walbridge Funeral Home, Inc., 139 Vt. 288, 292–93 (1981) (rejecting defenses in a zoning enforcement action brought by the Town against a funeral home that had

obtained a permit to expand its facilities, but had not disclosed that its expanded facilities would include a crematorium; the defenses were rejected because the funeral home operators had not disclosed in their application materials that they intended to operate a crematorium). In summarizing the Town's assertions in Hanson-Walbridge, the Court noted that the enforcement action was not based upon the issued permit, but rather "[i]ts only claim is that the bounds of permitted use have been exceeded." Id. at 292. Thus, Neighbors accurately summarize that zoning enforcement actions may be premised upon a violation of stated conditions, as well as upon claims that the respondent has violated the applicable zoning regulations by using property in a manner for which they have not secured approval.

But we note a distinction in the law governing municipal zoning enforcement actions that the parties here have not yet addressed. Municipal zoning administrators have an absolute duty to administer and enforce the zoning bylaws. In re Petition of Fairchild, 159 Vt. 125, 130 (1992) (citing the former 24 VSA § 4442(a), now codified in 24 V.S.A. § 4448(a), which provides that "[t]he administrative officer shall administer the bylaws literally and shall not have the power to permit any land development that is not in conformance with those bylaws" (emphasis added)). A private party who has "interested person"[5] status may also petition for enforcement of "all decisions" concerning municipal land uses. 24 V.S.A. § 4470(b).

When comparing these distinctive enforcement authorizations, we conclude that a zoning administrator, and not an adjoining property owner, has the authority, and the obligation, to prosecute those who use their land without proper permit approval. We find no authority for a private party to prosecute a landowner for using the latter's property without first obtaining a necessary zoning permit, and we find no authority bestowed upon this Court for allowing such a private party prosecution to occur. Clearly, an aggrieved neighbor may petition this Court to enforce a municipal land use decision. Id. But a private party who witnesses a use of land without permit approval may only bring an action to compel the administrator to perform her duties; the law does not authorize the aggrieved neighbor to bring the enforcement action themselves. Fairchild, 159 Vt. at 131.[6]

---

[5] "Interested persons" is a term defined in 24 V.S.A. § 4465(b).

[6] An aggrieved neighbor may also appeal a zoning administrator's decision not to enforce the zoning regulations. See 24 V.S.A. § 4465. We have not been made aware of the Zoning Administrator here specifically deciding not to initiate a municipal zoning enforcement action against respondent, and we have not been asked in these proceedings to opine on such a decision, or an appeal therefrom.

9

In their Petition for enforcement, Neighbors maintain that Permit No. 1997-28 does not authorize dinner service at the Lakeview Inn because the predecessors-in-interest to Respondent did not seek approval to serve dinner or evening meals. Indeed, the 1997 ZBA Minutes reflect that the then-applicants represented that "no evening meals or full-course dinners" would be available at the Inn. 1997 ZBA Minutes, at 1. Respondent counters that the then-applicants always intended to serve dinner at the Inn, just not immediately. Whatever the proper interpretation of the 1997 Permit and Minutes, this much is clear: there is no expressed or permissibly implied condition in the Permit that prohibits the serving of evening meals, and neither is there an expressed or implied authorization for serving evening meals in the future. Since this Petition action may only concern itself with enforcement of the municipal permit and decision, and we conclude that no enforceable term of the Permit pertains to evening meals, we are compelled to dismiss Neighbors' Petition.

Respondent argues that subsequent actions of the ZBA chair and the Zoning Administrator memorialized or authorized the serving of evening meals. We decline to address this claim in these proceedings, since such a legal question is beyond the scope of the legal issues raised by Neighbors' Petition. To opine on the legal arguments Respondent offers would require this Court to render an advisory opinion; something we should not embark upon. See In re 252311 Investments, Ltd., 2006 VT 27, ¶ 19, 179 Vt. 409 (citing Parker v. Town of Milton, 169 Vt. 74, 77 (1998)).

In light of our determinations here, we conclude that, even when viewing the applicable facts in a light most favorable to Neighbors, their Petition must be **DISMISSED**, as there is no provision of the prior zoning decisions concerning the Lakeview Inn that precludes, or authorizes, the service of evening meals. We therefore enter summary judgment in Respondent's favor; for these same reasons, we conclude that Neighbors' motion for summary judgment must be **DENIED**.

## II.     Should sanctions be imposed upon Neighbors or their legal counsel?

The remaining motion pending before us is Respondent's motion for sanctions against Neighbors pursuant to V.R.C.P. 11. Respondent's motion is rather perfunctorily, as it provides no separate memorandum in support, but rather relies upon its memorandum in support of summary judgment as to Neighbors' Petition, which is incorporated by reference. For the reasons stated below, we decline to impose any sanctions upon Neighbors or their counsel.

10

Rule 11 imposes several duties upon parties to litigation and their attorneys. The Rule provides that the act of signing pleadings is a representation to the trial court, and the other parties, that (1) the claims asserted are not being presented for an improper purpose; (2) the legal assertions are "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"; (3) their factual contentions have evidentiary support; and (4) their denials have a factual basis as well. V.R.C.P. 11(b)(1)–(4). Respondent's assertion for sanctions, brief as it is, appears premised only upon an alleged violation of subsection (b)(2); they offer no assertion of improper purpose, nor do they allege that Neighbors' factual representations lack foundation. As is often the case in matters so serious as to result in litigation before this Court, the parties' disputes principally focus upon the proper application of the applicable law to the material facts.

As is evidenced by the lack of brevity in this decision, the legal issues here have not been easy to filter; the Court struggled to research and refine its Decision, which went through several drafts. Ultimately, the Court founded its determinations, not upon legal arguments offered by either party, but by an analysis compelled by the limited authority for an aggrieved neighbor to prosecute a zoning enforcement action under 24 V.S.A. § 4470(b). The Court's deliberations were compounded by its initial confusion over what constituted the "decision" that was the subject of Neighbors' Petition, and what weight to afford representations by Respondent, and its predecessor permittees, including the representation during the 1997 permit proceedings that "no evening meals or full-course dinners" would be served. Were this enforcement action brought by the Town, rather than the aggrieved Neighbors, a different outcome could have been possible.

The Court wrestled considerably with the distinction between the authority of a municipality and an aggrieved interested person to bring a zoning enforcement action. While the Court has concluded that Neighbors' action must ultimately be dismissed, we see no basis for concluding that their action was frivolous. In fact, Respondent never sought to contest in this proceeding Neighbors' assertions that the ongoing service of evening meals and receptions at the Lakeview Inn has an adverse noise impact on these Neighbors. Those factual and legal issues may be the subject of another appeal already pending before the Court concerning Respondent's application for a permit to conduct the very evening commercial activities that were at issue here. See In re Lakeview Inn Conditional Use Permit, No. 193-10-09 Vtec. While we have concluded that this specific Petition must be dismissed, we caution against interpreting our holding here as

one that concludes that Neighbors' concerns lack merit. Accordingly, we find no violation of Rule 11.

## Conclusion

For all these reasons, we **DENY** Respondent's motion for sanctions, having concluded that there has been no evidence presented of a violation of V.R.C.P. 11(b) by either Neighbors or their counsel.

In addition, and for the reasons expressed above, we **DENY** Neighbors' motion for summary judgment. We conclude, however, that since Neighbors are only statutorily entitled to petition for enforcement of a municipal land use decision, and Zoning Permit No. 1997-28 does not specifically prohibit the serving of evening meals at the Lakeview Inn (nor does it authorize such use), their Petition must be dismissed as a matter of law. For these reasons, we conclude that Respondent's motion for summary judgment must be **GRANTED**.

A Judgment Order accompanies this Decision. This concludes the current proceedings on this Petition before this Court.

Lastly, in light of the Decision rendered today, we conclude that the companion case concerning an appeal of Respondent's conditional use application should be removed from inactive status and placed upon the active docket. A hearing notice in Docket No. 193-10-09 Vtec accompanies this Decision, so that the parties may discuss with the Court the proper scheduling of that appeal for trial, unless otherwise resolved by the parties.

Done at Berlin, Vermont, this 2nd day of August 2010.

_____
Thomas S. Durkin, Judge

12