LUIS J. A. VILLALON ET AL. *v.* TOWN OF WESTPORT ET AL.

SUPERIOR COURT        FAIRFIELD COUNTY        FILE No. 145139
                      AT BRIDGEPORT

Memorandum filed October 10, 1973

*Koskoff, Koskoff, Rutkin & Bieder,* of Bridgeport, for the plaintiffs.

*Stanley P. Atwood,* town counsel, and *Warren P. Joblin,* both of Westport, for the defendant town of Westport.

*Josem & Josem,* of Norwalk, for the defendant Kowalsky Properties, Incorporated.

FitzGerald, J. This action was brought by writ, summons and complaint returnable to court on the third Tuesday of January, 1972. The plaintiffs are Luis J. A. Villalon and his wife, Josephine, and Morris J. Shilepsky and his wife, Rose. They are property owners and residents of the town of Westport. The defendants are the town of Westport and Kowalsky Properties, Inc., a Connecticut business corporation having its office and principal place of business in Westport. It has also occupied the status of an owner of real property in that town.

In substance, the first five paragraphs of the first and third counts of the complaint and the first four paragraphs of the second count thereof allege that the defendant Kowalsky Properties, Inc., hereinafter called Kowalsky, is and has been the owner of certain parcels of land located off Easton Road in Westport; that this defendant through its agents and employees has been engaged in the illegal excavation and removal of sand and gravel from portions of its properties in violation of the zoning regulations of the town, not having sought and obtained permission to do so from the planning and zoning commission of the town; that the plaintiffs Villalon are the owners of certain property adjacent on the north and east of Kowalsky's properties; that the plaintiffs Shilepsky own certain property in

proximity to that of Kowalsky; and that as a result of the illegal actions of Kowalsky the plaintiffs have suffered and will suffer serious loss, injury and depreciation in the value of their properties and be deprived of the quiet enjoyment thereof.

The remaining paragraphs of the second count, directed solely against Kowalsky, allege that its actions constitute a nuisance and an irreparable injury to the plaintiffs in specified respects. The remaining paragraphs of the third count, directed solely against the defendant town, allege that this defendant has initiated procedural steps to acquire nearly twenty-one acres of the Kowalsky property for use by the town as a dumping area for leaves and tree cuttings; that the town, as partial consideration for acquiring these properties, intends to permit for several years the continued and illegal excavation and removal of sand and gravel by Kowalsky in violation of the town ordinances and zoning regulations; and that as a result thereof the plaintiffs will suffer serious loss, injury and depreciation in the value of their properties and be deprived of the quiet enjoyment thereof.

The first count, also directed against Kowalsky, and the third count conclude with the allegation that the plaintiffs have no adequate remedy at law. The reliefs sought against Kowalsky and the town are injunctive; the plaintiffs seek a cessation of the alleged illegal activities and actions of the defendants. The last prayer for relief, directed solely against the town, reads: "An order enjoining the [defendant town] from benefitting through use of said property and thus deriving benefit through its malfeasance and tolerance of the aforementioned illegal activities."

The following facts are admitted in the pleadings or were undisputed at the trial or find support in the evidence as a whole.

Kowalsky as a corporation is and has been engaged for many years in the business of excavating and removing gravel and other substances from the soil for sale. Paul Kowalsky is and has been an officer of the corporation in charge of its business and administrative activities. Between 1945 and 1952 Kowalsky purchased three contiguous tracts of land situated in Westport. While all three tracts were often referred to as the Kowalsky gravel pit, only two, constituting 37.69 acres, are involved in this litigation. In 1952, Kowalsky was given permission by the planning and zoning commission of Westport to subdivide the three parcels into building lots. It is the court's understanding that most if not all of the lots sold were located in the first parcel, acquired by Kowalsky in 1945 and not here involved. The initial purpose of Kowalsky in acquiring all three parcels of land was to excavate and remove therefrom sand and gravel. The land in its entirety was and is located in an AAA residential zone. The property of the plaintiffs Villalon shares a 900-foot border with the second and third Kowalsky parcels; that of the plaintiffs Shilepsky is about one-quarter of a mile from the Kowalsky property. The Villalons purchased their property, constituting about four acres, on July 8, 1952, and the Shilepskys their property on February 21, 1957.

Kowalsky excavated from all three parcels. The excavations on the second and third parcels, acquired in 1951 and 1952, came to an end on January 4, 1972, if not before, with an order to cease and desist issued by the zoning enforcement officer of Westport to Kowalsky. Any and all excavations made by Kowalsky at any time were open, visible and notorious, and well known to persons in Westport and to certain of its officials. Kowalsky was given to understand by persons connected with the town that securing a permit for such excavations

was not required. Kowalsky did not engage a lawyer to look into this precise situation until matters came to a head later.

By letter dated January 3, 1972, written to the planning and zoning commission, the town counsel, John W. Boyd, stated in effect that in his opinion Kowalsky could not acquire a nonconforming use which would permit it to remove gravel and other materials from the third tract, purchased in 1952, since this property was acquired by Kowalsky after a gravel removal permit was required by the town. As to the second tract, purchased in 1951, no opinion was expressed by the town counsel at that time because he did not know the date of its acquisition. It was the town counsel, among others, who previously had given Kowalsky to understand that a permit for such excavations was not required by law. And the chairman of the planning and zoning commission had advised Kowalsky that any amendment to the zoning ordinance on the question of excavation permits had no application to Kowalsky's excavation activities. Other town officials such as the town planner and the first selectman had led Kowalsky to believe that its excavation activities had been entirely legal and permissive from their very start. So also the plaintiffs were equally lulled by town officials into the belief that the excavation activities had been conducted legally. It is the contrary determination by the town counsel which brought about the litigation at bar.

On September 1, 1972, Kowalsky sold to the town 20.7 acres, which constituted the remaining unsold portions of the three original tracts which had been the subject of excavations by Kowalsky. On June 23, 1972, the planning and zoning commission had issued a special permit to the town permitting the use of the land for disposal of noncontaminated bulky waste and leaves; the permit is subject to

numerous conditions and safeguards. The purchase of Kowalsky's properties was approved by the planning and zoning commission and the board of finance, and at a representative town meeting. The plaintiffs opposed the purchase and the issuance to the town of the special permit.

When the plaintiffs purchased their properties, they knew that Kowalsky was removing sand and gravel from its properties. They were led to believe by Kowalsky and certain town officials that such activities did not require the issuance of a permit. The plaintiffs engaged no lawyer at that time to check the law. Villalon, a layman, did some browsing in the law himself. The plaintiffs Shilepsky could not see the subject properties from their land except from upstairs windows of the house and to some extent in the winter months when the leaves were off the trees. After the plaintiffs Villalon purchased their property, they made improvements thereon, including the installation of outdoor recreational areas such as a swimming pool and tennis courts; portions of the pool were installed by Kowalsky. Actually, there has been no outward display of bad feelings between the Villalons and the Shilepskys on the one hand and Paul Kowalsky on the other. Villalon owns and publishes the local newspaper. Shilepsky is also a business man of prominence in the community and has done some work in the real estate field. During the summers of 1967 and 1971, the Villalons rented their home premises for about $4600 for each season.

On January 4, 1972, when the zoning enforcement officer issued a cease and desist order against Kowalsky, the order was immediately obeyed. Thereafter, to date, neither of the two defendants has done any excavation or engaged in other activity on the subject properties. Without question, the prior excavation activities by Kowalsky have proven

annoying and disturbing to the plaintiffs Villalon and have affected to some extent the quiet enjoyment of their home. The view of the excavated areas is not an inspiring one. The plaintiffs Shilepsky are affected only to a minimum degree because of the more distant location of their house. As stated earlier, it is injunctive relief only that the plaintiffs are seeking. The prayers for relief cannot be said to give rise to a claim of damages as such. Moreover, the injunctive reliefs sought are mandatory in nature as well as negative.

Without laboring the point, there was introduced at the trial sufficient evidence to warrant a finding that it would take over three years to refill the subject properties to their original contours, at a total cost of at least $1,445,000. In view of today's shortage of commercial gravel, it could well be that enough gravel could not be obtained in the market to fill the excavation gaps at any cost. Hence, the cost of such an undertaking and the time required to accomplish it cannot be determined with any degree of accuracy.

But the basic question giving rise to the problem posed is that of zoning. The case of *Teuscher* v. *Zoning Board of Appeals,* 154 Conn. 650, is revealing. That is a case in which a property owner appealed a ruling of the zoning board of appeals of Westport sustaining an order of the zoning enforcement officer to cease and desist from the removal of gravel. The Supreme Court, affirming the decision of the Court of Common Pleas dismissing the appeal as having no merit, said in part (pp. 654, 657, 658, 659): "The Westport zoning ordinance is now, and since its inception in 1930 has been, so written as to permit only those uses specifically authorized in each zoning district. Uses not specifically authorized are prohibited. The mining of gravel was never a permitted use in any zoning district. . . .

Whether the gravel pit was or was not a noncon-forming use is not controlling . . . . Even if the ordinance restricts a beneficial use to which the property had previously been devoted, this is not decisive on the question of constitutionality of the ordinance. 'If this ordinance is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional.' . . . The West-port ordinance obviously was enacted for the pur-pose of regulating the removal of earth, loam, top-soil, sand, gravel, clay, stone or soil and to prevent and control the unsightly and dangerous conditions which are common in such operations and which are detrimental to the safety, health and welfare of the community and the protection of property. . . . The ordinance merely requires that the plaintiff, as well as any other landowner in any zoning district in the town, must apply for a permit and comply with certain requirements in order to mine gravel and other earth products."

It would follow from a reading of, and an applica-tion of, the opinion in *Teuscher* v. *Zoning Board of Appeals,* supra, that any excavation on the subject properties by Kowalsky after its acquiring of them was improper and illegal in the absence of a permit issued by the planning and zoning commission. The fact that Kowalsky, through its agents, did not know this to be so, and was led to believe by certain officials of the town that a permit so to excavate was not required by the zoning regulations of the town, does not in itself exculpate Kowalsky. But from an equitable standpoint it merits consideration. That all parties involved acted honestly but mis-takenly is the finding of the court on this vital aspect.

Is the injunctive relief, negative and/or manda-tory, claimed by the plaintiffs available to them?

The plaintiffs Villalon, from the standpoint of injury, may have a stronger standing on the facts than the plaintiffs Shilepsky have. It is to be remembered that damages as such are not claimed by the plaintiffs in their prayers for relief in this bizarre case. Nor does the evidence offered by them warrant any finding in terms of monetary loss.

The case was returned to court on the third Tuesday of January, 1972. Kowalsky subsequently sold the subject properties to the defendant town on September 1, 1972. Since the issuance of the cease and desist order to Kowalsky on January 4, 1972, no excavations have been made by Kowalsky or anyone else. It cannot be found that either defendant intends a resumption of excavations. Such fear on the part of the plaintiffs, if they have such fear, is not justified. The order to cease and desist is in full force and effect and remains so. What is there to be enjoined from a negative standpoint on the part of either defendant? That the town secured a special permit from the planning and zoning commission on June 23, 1972, to "conduct . . . a depository for non-contaminating bulky wastes and leaves" on the subject properties does not enter into the case. There was no evidence presented giving rise to a claim that this latter activity on the part of the town involves or constitutes any form of excavation.

The prayer for relief, directed solely against Kowalsky, to restore the original contours of the areas excavated cannot be granted. Under the doctrine of comparative injury, equity may sanction the denial of injunctive relief when such relief would cause damage greatly disproportionate to the injury sought to be redressed. See, generally, *Moore* v. *Serafin,* 163 Conn. 1. It has already been noted that the cost of rectifying the results of the excavations

carried on over the years by Kowalsky could go into the millions.

The plaintiffs and Kowalsky were just as lax in not determining what the law was regarding the issuance of permits for excavations as were various officials of the town in the advice which they gave the plaintiffs and Kowalsky. To this extent they all were in pari delicto. Equity should not intervene under these disclosed circumstances.

The problem posed is one entirely in equity. Because all parties have contributed to the ultimate result in one form or another, and in one degree or another, the court is firmly of the opinion that they should be left in the exact status in which they were found at the trial.

Accordingly, the plaintiffs are denied injunctive relief in the forms requested by their prayers for relief. To this extent the issues are found for the defendants.