### Town of Bennington v. Hanson-Walbridge Funeral Home, Inc.

[427 A.2d 365]

No. 319-79

Present: Barney, C.J., Larrow, Billings and Hill, JJ., and Smith, J. (Ret.), Specially Assigned

Opinion Filed February 3, 1981

Motion for Reargument Denied February 23, 1981

290

*Witten & Carter, P.C.*, Bennington, for Plaintiff.

*Robinson E. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant.

Larrow, J. Plaintiff Town of Bennington sought injunctive and declaratory relief against defendant Hanson-Walbridge Funeral Home, Inc. It claimed that operation of a crematory for human bodies on funeral home premises, in an area zoned office-residential, was a violation of the local zoning ordinance, as an unauthorized extension of a pre-existing nonconforming use. The defendant relied upon a ruling by the town zoning administrator that no zoning permit was required, and the issuance of a building permit. Somewhat unique on its facts, the case is even more unique because of the procedural tactics of the trial court, which took an advisory verdict upon three submitted questions, and then some seven months later granted defendant's motion to dismiss with prejudice, stating only that the elements of estoppel were present. No notice of decision was given under V.R.C.P. 52(a), no findings of fact made (or requested) under that rule, and no reason assigned for the inordinate delay. We reach the merits of the appeal by treating the unusual procedures as resulting in a defendant's judgment, based on implicit adoption of the jury findings.

Absent findings of fact, highly desirable in a case of this complexity, we must assume the version of the prevailing party to have been adopted by the trial court. So viewed, the following narrative details the facts essential to decision.

In 1977 one Hanson, an owner of the defendant funeral home, met with one Hurd, the Bennington zoning administrator and building inspector. This meeting followed some study of increased demands in the area for cremation, which had been met by utilization of out-of-town independent facilities. He desired to install a cremator in a garage which was to be remodelled on the funeral home premises. The premises were already a nonconforming use in the office-residential zone. He was told to furnish a sketch, and later did so. He was told Bennington had no regulations on incinerators, but that clearance from the Vermont Pollution Division of the Agency of Environmental Conservation was required. He obtained such clearance, and was told no zoning permit was necessary. His application for a building permit for a "pathological incinerator" was approved and issued, with estimated cost for garage alteration put at $1,100. Actual cost eventually exceeded $12,000. Asked if the incinerator would be used on an intermittent basis for disposal of waste products associated with the regular conduct of the funeral home business, Hanson replied that it would. He was not asked about cremations. He did state that the service to be rendered was one he was already furnishing, an answer accurate only in the sense that he was handling arrangements for cremations actually performed elsewhere. Cremations of whole bodies on the premises was not discussed. Neighborhood complaints following the crematory installation resulted in the present action. Before beginning operations, defendant registered the trade name "Vermont Cremation Service" with the Secretary of State.

By special verdict upon questions submitted to it, the advisory jury found, in substance, that (a) Hanson did not represent to the administrator that the "pathological incinerator" would be used only to dispose of waste materials and lead him to understand there would be no human cremations, (b) that the administrator did not make the full investigation or inquiry expected from a reasonable, prudent administrator, and (c) that Hanson did not, either by statements made or failure to provide adequate information, make deliberate misrepresentations causing the administrator to be misled and to believe there would be no cremations done. As we have stated, we assume these determinations to have been adopted by the trial court. Their net effect is to remove from Hanson any

onus of misrepresentation, and to blame the administrator for not investigating the application further. But they do not dispel the conclusion, compelled by the record, that there was no actual disclosure of intent to perform human cremations, and no actual knowledge by the administrator of such intent. The record clearly shows that, however good faith the actions of Hanson, and however negligent the acts of the administrator, the ruling that no zoning permit was required was made without knowledge of its intended use for human cremation. The building permit for a pathological incinerator was issued under the same circumstances.

■ As an initial ground for affirmance, defendant would have us bar the appeal on the claimed preclusive effect of 24 V.S.A. § 4472. It states, accurately, that the Town took no appeal from the building permit within the five days allowed by 24 V.S.A. § 3109, or from the decision of the zoning administrator within the fifteen days permitted by 24 V.S.A. § 4464. It claims that, in the absence of such appeals, 24 V.S.A. § 4472(d) applies, binding "all interested persons . . . by such decision or act of such officer," and barring contest "directly or indirectly" of such decision or act.

As to the building permit, the short answer is that the Town does not here contest the building permit in any aspect. It concedes it to be in force and effect. *Fisher* v. *Town of Marlboro*, 131 Vt. 534, 310 A.2d 119 (1973). Its only claim is that the bounds of permitted use have been exceeded. Another answer is that § 4472 has no application to building permits. It relates only to appeals to the zoning board of adjustment and to superior court under § 4464 and § 4471. 24 V.S.A. § 4472(a), (d). The appeal on a building permit is to neither of these bodies, but to a board of arbitrators. 24 V.S.A. § 3109.

The same general reasoning denies preclusive effect to § 4472 with respect to the ruling of the administrator that no zoning permit was required. The Town refrains from the probably specious argument that the ruling was not an "act" or "decision." It concedes that it is bound by the ruling, urging only that the ruling authorizes a pathological incinerator, nothing more, in the absence of disclosure of the present use for human cremation. We agree. A "decision" has been

defined as "a determination or result arrived at after consideration . . . ." Webster's New International Dictionary 2d ed. (1955). Without actual information of the proposed crematory operation, the administrator's only decision was that a pathological incinerator would not violate the zoning bylaw. Our opinion in *Graves* v. *Town of Waitsfield,* 130 Vt. 292, 292 A.2d 247 (1972), does not govern the present case, because in that case a zoning permit to set up two mobile homes on two acres of land issued with full knowledge of what the applicant intended. Absence of that knowledge here, however innocent the applicant and negligent the administrator, precludes the making of a "decision" upon the true facts. The relief sought is not barred by 24 V.S.A. § 4472. The use applied for and contemplated by the zoning permit must now stand unchallenged. It is the extension of that use to include the cremation of human bodies, either in connection with the funeral business or as an independent service, that is subject to the judicial review plaintiff seeks.

The defendant also urges as grounds for affirmance substantially the same position taken by the trial court, that plaintiff town is estopped from challenging its crematory operation. A number of reasons appear why the asserted equitable estoppel is not here applicable.

In *Maurice Callahan & Sons, Inc.* v. *Cooley,* 126 Vt. 9, 220 A.2d 467 (1966), we indicated a great reluctance to bind or estop municipalities engaged in a governmental function by unauthorized acts of its officers. We did not reach the issue in *Graves* v. *Town of Waitsfield, supra.* Many other courts have shared our reluctance. 28 Am. Jur. 2d *Estoppel and Waiver* §§ 129, 139. This is particularly true in the absence of any benefit to the municipality accruing from the acts complained of. In any event, the circumstances of this case do not dictate the enunciation of a general rule, or the enumeration of circumstances justifying possible exception therefrom. The generally accepted elements of equitable estoppel, even if applicable, are simply not present here.

Many cases have reiterated the general elements of equitable estoppel. They are "(1) [t]he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel

has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Rosenthal* v. *National Life Insurance Co.*, 486 F. Supp. 1018, 1023 (S.D.N.Y. 1980); accord, *Capo* v. *Century Life Insurance Co.*, 94 N.M. 373, 610 P.2d 1202 (1980); *Boykins Narrow Fabrics Corp.* v. *Weldon Roofing & Sheet Metal, Inc.*, 221 Va. 81, 266 S.E.2d 887 (1980); 28 Am. Jur. 2d *Estoppel and Waiver*, §§ 35, 40. We ourselves have recently emphasized the requirement of knowledge of the pertinent facts. *Hadlock* v. *Poutre*, 139 Vt. 124, 423 A.2d 835 (1980).

■ Here there is no substantial claim that the plaintiff knew of the contemplated use of the facility for human cremation. But the defendant claims this to be immaterial, because of a duty to make further inquiry about this proposed use. The law is otherwise. The duty to disclose the principal intended use truthfully and accurately rests squarely on the applicant. *Freewood Associates Ltd.* v. *Davie County Zoning Board of Adjustment*, 28 N.C. App. 717, 222 S.E.2d 910, cert. denied, appeal dismissed, 290 N.C. 94, 225 S.E.2d 323 (1976); *Christy* v. *Harleston*, 266 S.C. 439, 223 S.E.2d 861 (1976). A claim of estoppel in the absence of such disclosure is unfounded. *Id.* at 443–44, 223 S.E.2d at 863.

■■ Another reason for ruling out an estoppel defense is that although Hanson may have been acting in good faith it is clear that his failure to fully disclose the intended use of the incinerator led to the situation in which defendant now finds itself. Courts will not predicate an estoppel in favor of one whose own omissions or inadvertence contributed to the problem. *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 316 A.2d 394 (1972); *Muhleisen* v. *Allstate Insurance Co.*, 203 So. 2d 847 (La. Ct. of App. 1967); *Continental Credit Corp.* v. *Norman*, 303 S.W.2d 449 (Tex. Civ. App. 1957). The defendant here contributed to the existing problem in several ways. Its representation that alteration costs would be only $1,100 contributed to the impression that the change would not be as substantial as it proved to be, and is certainly a poor basis for an estoppel. Its evasive terminology also exacerbated the situation. Hanson referred to the crematory, never as such, but as an incinerator, a pathological incinera-

tor, and as a refractory. None of these terms indicated the principal intended use. The administrator's understanding that the facility would only be used to dispose of waste, such as limbs and bandages, is entirely consistent with the use of these terms. An incinerator is customarily associated with the disposal of refuse. See 24 V.S.A. § 2203a. A pathological incinerator refers to a structure or furnace used to dispose of carcasses, organs, or solid organic waste. Regulation of the Environmental Conservation Agency, Vermont Regulations Annotated, Title 10, ch. 23, 5-101(28), (43). A refractory in this context merely refers to a substance capable of withstanding great heat. Webster's New International Dictionary 2d ed. (1955). It is, we think, especially noteworthy that when Hanson registered with the Secretary of State he chose the trade name "Vermont Cremation Service." This is the frank, truthful disclosure that should have been made to the zoning administrator. The intended principal use would have been clearly indicated and the required procedures for approval, if forthcoming, could have been followed. Good faith or not, the administrator was justifiably deceived, and estoppel cannot be predicated upon this state of facts. Reversal is required, unless the defendant is correct in its final contention, that denial of equitable relief is supported by the doctrine of comparative injury, even though the trial court did not rely upon this ground for dismissal. In our view, it is not.

We have, it is true, limited an adjoining landowner to monetary relief, denying removal of a motel constructed too close to a boundary line. *Thompson* v. *Smith*, 119 Vt. 488, 511, 129 A.2d 638, 653 (1957). But that litigation was between private parties, where the respective hardships were capable of comparison. This proceeding is brought by the municipality itself, whose community interests are not so easily evaluated. Even assuming that the large expenditures here by the defendant are a proper consideration, in spite of being grossly minimized in the permit application, the interests of the municipality itself in suppressing the continued operation are not so easily quantified. One of the primary purposes of zoning is to bring about the orderly physical development of the community by confining particular uses to defined areas. *Vermont Brick & Block, Inc.* v. *Village of Essex Junction*, 135 Vt. 481, 380 A.2d 67 (1977). To allow expansion of such uses is to

frustrate the spirit and purpose of zoning, and to inflict potentially serious harm upon development of the town as a whole. This harm cannot be weighed against the financial loss to the defendant.

The two cases cited by the defendant do not, we think, justify any other result under the circumstances here. *Villalon* v. *Town of Westport*, 30 Conn. Supp. 356, 317 A.2d 155 (1973), a trial court decision, was an action by adjoining landowners, like *Thompson* v. *Smith, supra,* involving illegal use of a sand and gravel pit which had already ceased, and literally millions of dollars expenditure to restore former contours. In *Town of Marblehead* v. *Derry*, 356 Mass. 532, 254 N.E.2d 234 (1969), although the action was brought by a town asking that a large house be moved as too close to the roadway serving it, the situation was largely due to actions by the town itself in approving a change in road location bringing the road closer to the then existing house. The court rejected the doctrine of estoppel. And it applied comparative equities to preclude removal only in the presence of good faith, full disclosure, reliance upon actions by the town itself other than in a zoning administrative capacity, and no showing of any public advantage which could result from rigid and inequitable enforcement. Were we to hold the doctrine of comparative injury to be applicable in actions brought by the municipality itself, under any circumstances, the ones in this case do not commend themselves to such application. We do not pass upon the question of whether application of the doctrine can be justified in the face of the facially mandatory provisions of 24 V.S.A. § 4445 directing actions to "prevent, restrain, correct or abate" illegal construction or use.

In short, the decision below must be reversed. The undenied use of the premises in question is clearly an unauthorized extension of nonconforming use, under the principles laid down in *Vermont Brick & Block, Inc.* v. *Village of Essex Junction, supra.* And injunctive relief is not barred by 24 V.S.A. § 4472, equitable estoppel, or the doctrine of comparative injury. The Town of Bennington is entitled to the relief sought, and we will afford it here.

*Judgment reversed. Defendant Hanson-Walbridge Funeral Home, Inc., is restrained and enjoined from using its premises*

*on West Main Street, Bennington, Vermont, for the cremation of human bodies unless and until it secures the requisite permit therefor under the zoning bylaws of the Town of Bennington.*