**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Beckstrom[1], et al.     }
                                   }
                                   }     Docket No. 212-11-98 Vtec
                                   }
                                   }

Decision and Order

The project at issue in this appeal is the construction of a 100-foot-tall radio communications tower and a 10' x 12' cement block building, on land in the Town of Hyde Park owned by H.A. Manosh, Inc. A group of neighbors and other Hyde Park residents (the Appellant Group) was represented by Stephanie J. Kaplan, Esq. in earlier stages of the proceeding; the members of the group now represent themselves. Appellee-Applicant H.A. Manosh, Inc. is represented by John H. Hollar, Esq.; the Town is represented by Stephen F. Stitzel, Esq. but did not take an active role at trial.

After many preliminary matters were resolved in this and several other cases involving proposals to install taller towers on the same parcel, and those other proposals were remanded to the DRB, an evidentiary hearing was held in the remaining issues in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Applicant owns an approximately 29-acre parcel of property in the Rural Residential 2 zoning district in the Town of Hyde Park. Applicant also owns a radio tower located on the Jones property, a nearby parcel; that tower has been in existence since prior to the adoption of zoning in the Town. The Jones tower is not served by an improved roadway.

On April 18, 1997, Applicant applied for a zoning permit to " erect a radio antenna and support building." The application stated that the " tower will be 100 ft. high and building will be a cement block structure," that the dimensions of the structure would be 12' x 10', and that the setback from the nearest property line would be +/- 50 feet. The application form states that " [a]ny permit issued as a result of this application will be null and void in the event of misrepresentation or failure to undertake construction within one year of approval. . . . " At the time of this application, Appellee-Applicant had intended to move the existing tower from the Jones parcel to this location, and had expressed this intention to the Zoning Administrator, and had stated the height of the Jones tower to be 100 feet in height, but that intention was nowhere reflected in the permit application or the issued permit. In fact, the Jones tower is closer to 75 feet tall, measured[2] to the base of the metal structure rather than the foot of the concrete base, and without its antennas.

The Zoning Administrator approved the application and issued Zoning Permit No. 97-06 on April 23, 1997, showing on its face an expiration date of April 23, 1998. It authorized as a " permitted use" a " Radio Comm[unication] Tower (100') and Support Building." In fact, the only permitted uses (as opposed to conditional uses) in this zoning district are agricultural and forestry, single family dwellings, and home occupations, and it should not have been approved as a permitted use. However, no party appealed from the issuance of that permit at that time and it became final.

A topographic site plan showing the existing logging road, the tower location, and a representation of the grade of the roadway, elevation of the site, and elevation of the tower (showing it by scale and by elevation as 100 feet tall, but not labeled as such), was prepared by Appellee-Applicant's engineers on April 17, 1997, but does not appear to have been provided to the Zoning Administrator in connection with the April 1997 zoning permit application. This plan was also used as the base plan in later Act 250 applications for a taller tower, not at issue in the present case.

The zoning permit issued by the Zoning Administrator on April 23, 1997 only allowed Appellee-Applicant to erect a 100-foot-tall radio communications tower and associated 10' x 12' cement block building at the site, meeting 50-foot setbacks. This permit did not authorize or require Appellee-Applicant to move the Jones tower to this site, whatever its height, even if all of the participants, including Appellee-Applicant, the Zoning Administrator, and some or all of the Appellants believed that that was what Appellee-Applicant was planning to do.

Appellee-Applicant also did not apply in this application for a permit to construct a road or improve the existing logging road to the site, and this permit did not cover or authorize any road construction (as contrasted with an Act 250 permit filed in September of 1997, in connection with that later application for a taller tower, to upgrade approximately 900 feet of logging road to provide access to the site.) Appellee-Applicant argues that there was an existing logging road to the site and that no local permit was required to upgrade that logging road. Under either scenario (whether no local permit was required for the road improvements or whether Appellee-Applicant failed to obtain a required local permit for the road improvements), work done on the road cannot be considered in determining whether Appellee-Applicant undertook construction within one year from approval. That is, if no local permit was required to upgrade the logging road for access to the site that was the subject of this permit, work done to improve that access road does not constitute undertaking construction under the April 1997 permit. Similarly, if a local permit was required to upgrade the logging road for access to the site that was the subject of this permit, but no local permit was applied for in the April 1997 permit, work done to improve that access road does not constitute undertaking construction under the April 1997 permit.

Some time after the April 1997 permit was issued, and before July 1997, Appellee-Applicant revised its plans regarding the height of the tower, considering instead plans to move a 150-foot or 160-foot tower from the Village to this proposed site. During the spring of 1997, carriers seeking tower locations for mobile telephone service were also making inquiries of landowners regarding likely tower sites in the area. By the summer and early fall of 1997, Appellee-Applicant had revised its local plans and had applied in the Act 250 process for a 150-foot, 160-foot, or 190-foot tower at this location. By that time, Appellee-Applicant was actively pursuing

plans to erect a taller tower at the site, and to lease space on the tower to mobile telephone carriers and it is understandable that Appellee-Applicant did not undertake actual work in the field under the April 1997 permit, as it was actively engaged in the permit process for a much taller tower[3].

No actual work on the ground was done towards carrying out any version of this project until January 24, 1998. In the three months between January 24, 1998 and April 23, 1998, all that was done was work on the road leading up to the site, including the installation of buried electrical conduit within the roadway. At the site, the most that may have been done by April 23, 1998 was some clearing at the site, and possibly some subsurface concrete work.

As we noted in the summary judgment decision, under Town of Bennington v. Hanson-Walbridge Funeral Home, Inc., 139 Vt. 288, 292-93 (1981), the April 1997 permit may be enforced according to its terms, unless it has become void for misrepresentation or lack of construction. It is important to focus on the fact that it authorizes only a 100-foot radio communications tower and a single 10' x 12' concrete block support building.

Appellants argue that as of the April 1997 application, Appellee-Applicant had already formulated the intent to install a 150', 160' or 190' tower at the location, and that the initial permit for a 100-foot tower was a misrepresentation of Appellee-Applicant's intent at the time, as well as a misrepresentation of the actual height of the Jones tower. Based on the voluminous evidence submitted in this proceeding, we cannot find that the April 1997 permit application was a misrepresentation of Appellee-Applicant's plans at the time the application was filed. Rather, at the time it was filed Appellee-Applicant was pursuing plans to install the Jones tower at that site, believing it to be approximately 100 feet tall, even though within a few months after that application Appellee-Applicant had revised and expanded its plans to move the taller Village Communications tower to the site, or to install an even taller tower at the site. The April 1997 permit is therefore not void for misrepresentation at the time the application was filed.

However, as of April 23, 1998, Appellee-Applicant had not undertaken any construction of the project applied for and authorized under the April 1997 permit. Construction had not begun on the 10' x 12' concrete block building authorized under that permit, nor had construction begun on a 100-foot-tall radio communications tower[4]. Even if by that date Appellee-Applicant's project had not changed to be a 160-foot (or taller) tower with a significantly upgraded 900-foot-long access roadway, the fact remains that all that Appellee-Applicant had done towards construction of its project was to clear and improve the road leading up to the site, install electrical conduit along the roadway, and perform some clearing and possibly some subsurface concrete work at the site. None of the construction authorized by the April 1997 permit had been undertaken as of April 23, 1998.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant-Applicant's April 1997 permit to construct a 100-foot radio communications tower and a 10' x 12' cement block building at the site, meeting 50-foot setbacks, was not void for misrepresentation, but that Appellee-Applicant failed to undertake construction of the improvements covered by the April 1997 permit within one year of its approval, and that therefore the April 1997 permit expired and became void as of April 23, 1998.

Done at Barre, Vermont, this 26th day of May, 2003.


_____
Merideth Wright
Environmental Judge


**Footnotes**

[1.]   Over the course of these proceedings Mr. Beckstrom moved from the area and thereby left the Appellant Group; however, the matter has been left under that caption to avoid confusion.

[2.]   Appellee-Applicant challenged Appellant Eric Blatt's methodology for this measurement; the Court specifically found the measurement technique to be within the scope of standard trigonometry and not requiring expert knowledge beyond the operation of a transit. See Doyle, Arthur Conan, The Musgrave Ritual, Strand Magazine, 1893.

[3.]   The July 1997 local permit for a 150-foot (later amended to 160-foot) tower was ruled to have properly been appealed. In that appeal this Court has most recently ruled that the taller tower was not exempt from the local telecommunications facilities bylaws. In addition, Act 250 permit proceedings on that application had been scheduled for February 2003 but appear to have been postponed.

[4.]   To some extent this is analogous to a developer's having a zoning permit to build a building on one lot within a larger subdivision. Work done on an access road and infrastructure for the subdivision may constitute the commencement of construction under the subdivision permit, but does not constitute the commencement of construction of the separate building having its own zoning permit. See, generally, In re Taft Corners Associates, 171 Vt. 135 (2000).