# STATE OF VERMONT

# ENVIRONMENTAL COURT

Appeal of Gary Martin

| | |
|---|---|
| & } | |
| } | Docket No. 249-11-02 Vtec |
| Town of Shrewsbury } | |
| } | Docket No. 21-2-03 Vtec |
| v } | |

Gary Martin

## Decision and Order

In Docket No. 249-11-02 Vtec Appellant Gary Martin appealed from a decision of the Development Review Board (DRB) of the Town of Shrewsbury, upholding the Zoning Administrator= s Notice of Zoning Violation that a conditional use permit was necessary for his firewood processing business use of a 40' x 60' building. In Docket No. 21-2-03 Vtec the Town of Shrewsbury brought an enforcement action against Gary Martin to require him to refrain from operating the firewood processing equipment at that location without applying for and obtaining conditional use approval to do so.

Appellant-Defendant is represented by Cortland T. Corsones, Esq.; Interested Persons Christopher and Catherine Morris are represented by John D. Hansen, Esq.; Interested Persons JoAnne Browning and Kerry L. O= Hara appeared and represented themselves; and the Town of Shrewsbury is represented by Mary C. Ashcroft, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows.

Gary Martin owns a parcel of land on the north side[1] of Tabor Road in the Rural Residential zoning district, on which is located his residence; he acquired this property in 1984. The boundaries of this property, which we will refer to as > the home parcel,= were not presented in evidence. In 1988 the Town of Shrewsbury Zoning Regulations were adopted. As of 1988 Mr. Martin was operating a firewood processing business on his home property to the north of the road, processing about 100 cords a year with a portable wood splitter. He may also have been splitting wood or storing split wood at or near an old barn located across Tabor Road from his home parcel.

In the Rural Residential zoning district, the permitted uses are: schools; agriculture and good forestry practices; single or two-family dwellings; accessory buildings; and cemeteries. The conditional uses are: gravel operations; commercial outdoor recreation; public utilities; home occupation; and wildlife refuge.

In 1992, Mr. Martin[2] acquired a 16.69-acre parcel on the south side of Tabor Road, also in the Rural Residential zoning district. He kept livestock on the property, which is a permitted agricultural use in the district. Even if he processed firewood or cut or split wood brought from elsewhere on this property as of his acquisition of it, that use of the property could not have constituted a grandfathered non-conforming use of the property, because he acquired the property after the Zoning Regulations had been adopted, and that was not an allowed use at the time.

In March of 2001 Mr. Martin obtained a subdivision permit to divide this 16.69 southerly parcel into two parcels, the more westerly of which was to be conveyed to others, and the more easterly of which, a 6.61-acre parcel, he was to retain for his own use. As of the date of trial the westerly property had not been conveyed.

On December 12, 2001, Mr. Martin applied both for a zoning permit to A build a 40' x 60' garage and storage building@ and to the Development Review Board for a conditional use permit to A build a 40' x 60' garage to store and maintain my logging and construction equip[ment] and to house my firewood processor,@ on the 6.61-acre parcel. Based on the representations in the applications and a site visit to the site of the proposed building, the Zoning Administrator returned the filing fee for the conditional use permit and noted on the returned permit application: A As business will not be conducted in the garage/barn I= ve decided not to ask you for a conditional use permit.@

The Zoning Administrator proceeded to issue the zoning permit[3] for the > 40' x 60' garage and storage building.= In so doing, the Zoning Administrator seems somehow to have treated the 6.61-acre parcel as a residential parcel, even though it had no residence on it, was separate from Mr. Martin= s home parcel, and was acquired after the Zoning Regulations went into effect, in considering even whether it could have been eligible for a storage building for Mr. Martin= s excavation equipment, as well as whether it could have been eligible for a conditional use permit for a home occupation processing firewood.

Mr. Martin then constructed the garage and storage building at issue in the present case on the 6.61-acre parcel. It is a pole barn construction, the back two-thirds of which is enclosed and is used to store his excavation, logging and construction equipment. The front third is open, although he stated at trial his intention to fully enclose it (with entry ports protected by plastic strip flaps for the logs) if he obtains approval to operate the equipment there. Mr. Martin has the firewood processor set up in the front third and operates it there.

The Morris house and land is located to the south of and across a brook from that parcel; the Morris driveway serves both the Morris home and the Martin garage and storage building. The Browning house is located directly across Tabor Road from the driveway to the Martin garage and storage building. The O= Hara house is located on the north side of Tabor Road, between the Martin home parcel and the Browning house. Thus, the Martin home parcel appears to be located both down the road and across the road from the Martin garage and storage building parcel.

In connection with the firewood processing operation, truckloads of logs are brought to the property from off-site locations and unloaded with mechanical equipment into storage piles.

When needed for processing, the logs are loaded onto a truck and transported to the open-sided section of the building. During the processing of a log, it is sawn into sections and then the sections are split into firewood by a splitter. The firewood pieces are loaded onto trucks by a conveyor belt for delivery to customers off the site. Most of the processing occurs in the winter months, amounting to 30 to 35 truckloads of logs or about 500 cords of firewood a year.

The noise of operation of the firewood processing equipment, and to a lesser extent the smoke or exhaust generated by the equipment, is detectable beyond the boundaries of the 6.61-acre lot, and at a level sufficient to be audible within the Morris house, even with the windows closed, and to disturb them, contrary to the requirements for a home occupation under ' 622.

On or about July 15, 2002, the Zoning Administrator sent Mr. Martin an undated Notice of Zoning Violation advising him that he had 15 days to apply for a conditional use permit and that failure to do so could subject him to fines for each day of violation. It did not advise him of his appeal rights, but he did in fact appeal that notice to the DRB and then to this Court in Docket No. 249-11-02 Vtec. Because it was undated and did not carry on its face the number of the return receipt, the fact that Mr. Martin received and signed a return receipt does not prove his receipt of that particular notice, as he received other correspondence from the Town in the same time frame regarding other projects.

If Mr. Martin had been processing firewood with a wood splitter on his home parcel, as of the date of enactment of the zoning regulations, that activity for his own household use would have been allowed as accessory to his residential use. That activity for sale to others might have either qualified as a business use of the home parcel which would have been allowed to continue as a pre-existing non-conforming use, or might have qualified as a home occupation under ' ' 413 and 622 if it met those standards. We note that a non-conforming use that is discontinued may not be resumed without approval. ' 250. Similarly, if he had built the garage and storage building on the home parcel, it might have qualified for the permitted use category of > accessory building,= if it was incidental and subordinate to the primary residential use of the parcel.

However, even if the 6.61-acre parcel were contiguous to the Martin home parcel, any pre-existing nonconforming use of the home parcel does not transfer to a later-acquired parcel, whether it is contiguous or merely nearby. See, e.g., In re Appeal of Deso, Docket No. 2000-237 (Vt. Supreme Ct., Feb. 8, 2001) (entry order of three-judge panel).

Moreover, on a separate parcel such as the 6.61-acre parcel at issue in this appeal, there was no principal use or building on the parcel for this proposed building to be accessory to; that is, the proposed garage and storage building was the principal use being proposed for the parcel, and should have been analyzed as such. It does not fall within any of the permitted use categories for the zoning district. Nor could it properly have been considered for conditional use approval as within the use category of > home occupation= on that separate parcel, because a > home occupation= is defined as using a minor portion of a dwelling for an occupation which is customary in residential areas and which does not change the character thereof. ' 413 (Emphasis added). Section 622 extends the home occupation use category only to operations wholly within the dwelling or an accessory building. Because of this definition, in fact the building did not fall within any category eligible to have received the zoning permit issued to it by the Zoning

Administrator as a > garage and storage building.= However, even if that permit was incorrectly issued, it was not appealed and has become final. Therefore, Mr. Martin was authorized to construct the building and is authorized to use it for storage and maintenance of his logging, excavating and construction equipment, and at least to house, if not also to operate, his firewood processing equipment.

Mr. Martin argues that the Town should be estopped from requiring him to obtain conditional use approval to operate the firewood processing equipment under the shelter of the open end of the building, because by applying to A house@ that equipment rather than to A store@ or to A maintain@ it, he meant the Zoning Administrator to understand that he wanted to operate it there as well.

Estoppel of a town is disfavored, and in any event the circumstances of this case do not give rise to an estoppel[4]. The Town did not know the true facts, that Mr. Martin intended to operate the commercial firewood processing equipment at the garage and storage building. Moreover, Mr. Martin did know the true facts, that is, it was his intention to operate the equipment there, yet he did not request approval of any processing operation at the site, even after the Zoning Administrator had stated in writing her understanding that there would be no business use of the site. It was not reasonable for him to interpret A business use@ of the site to mean customers coming to the property.

Rather, as in Town of Bennington v. Hanson-Walbridge Funeral Home, Inc., 139 Vt. 288 (1981), the application for the zoning permit only requested approval of a Agarage and storage building,@ and therefore garage and storage uses were all that was approved for the building itself. Further, based on that application, the Zoning Administrator reasonably interpreted the concurrent conditional use permit application, which added a specific reference that the building would be used to > house= the firewood processing equipment, as well as to store and maintain the logging and construction equipment, to mean that none of the equipment was proposed to be used in an on-site processing operation. Appellant did not prove that the common use of the verb A to house,@ which is not otherwise defined in the Zoning Regulations, carries the meaning of > to operate.= Rather, the common meaning of the verb A to house@ carries the meaning of > storing,= > enclosing= or > sheltering.=

Appellant also argues that at the Zoning Administrator= s site visit, she saw piles of logs and the firewood processing equipment already located outdoors on the 6.61-acre parcel, and therefore that she should have known that he intended to conduct the firewood processing operation at that location in the new building. However, nothing about the location of the equipment or the logs on the property was inconsistent with the proposed use of the proposed building to store, maintain or house any of the equipment or, indeed, to store processed firewood that had been processed elsewhere.

Based on the foregoing, it is hereby ORDERED and ADJUDGED in Docket No. 249-11-02 Vtec that a conditional use permit was necessary for Mr. Martin= s commercial firewood processing use of the 40' x 60' building, to the extent that that use can be approved at all on the property he acquired in 1992. This ruling is without prejudice to any application Mr. Martin may wish to make to conduct the firewood processing operation on his home parcel as a home occupation or

as a pre-existing nonconforming business use. It is hereby ORDERED and ADJUDGED in Docket No. 21-2-03 Vtec that Gary Martin is ordered and enjoined to refrain from operating the firewood processing equipment on the property he acquired in 1992, until or unless he has obtained all required permits to do so. However, due to the defects in the Notice of Alleged Violation, we will not impose a monetary penalty for his violation of that requirement prior to today= s resolution of the contested legal issue. Any violation of that requirement after today= s order may be the subject of an additional enforcement action, as well as an action by the Town or by the neighbors under 24 V.S.A. ' 4470(c).

Dated at Barre, Vermont, this 11th day of August, 2003.

_____

Merideth Wright
Environmental Judge

---

**Footnotes**

[1.]  In testimony Mr. Martin stated this 'home place' included land on both sides of Tabor Road. We note that even if it does, that land is separate from the parcel on the south side of Tabor Road which he acquired in 1992.

[2.]  We will refer to Mr. Martin in the singular as he is the only appellant or defendant in these two cases; the property is or was held by Gary and Amanda Martin.

[3.]  The zoning permit application contains the following standard language over the applicant's signature: "It is understood and agreed that I will abide by the Shrewsbury Zoning Regulations . . . . The permit is voided in the event of misrepresentation. . . ."

[4.]  We note that even in the rare cases in which estoppel has been allowed against the government in a zoning or building code context, the estoppel would not result in the applicant's being granted the permit in violation of the code. See, My Sister's Place v. City of Burlington, 139 Vt. 602, 609-610 (1981), in which the permit was still denied; the City was simply held liable for damages resulting from the applicant's reliance on the city employee's incorrect information that a restaurant could be built in that location.