**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

| | |
|---|---|
| Appeal of Spaulding } | |
| } | |
| } | Docket No. 131-8-03 Vtec |
| } | |
| } | |

Decision and Order on Cross-Motions for Partial Summary Judgment

David and Leslie Spaulding appeal from a decision of the Development Review Board (DRB) of the City of Montpelier, upholding the Administrative Officer's decision to grant a permit to Steven and Valerie Belanger approving an as-built garage with certain proposed modifications. Appellants David and Leslie Spaulding are represented by David L. Grayck, Esq.; Appellee-Applicants Steven and Valerie Belanger are represented by George E. Rice, Jr., Esq.; and the City of Montpelier is represented by Joseph S. McLean, Esq.

Appellants and the City have each moved for summary judgment on Question 1 of the Statement of Questions. Appellee-Applicants have joined in the City's response to Appellants' motion. The following facts are undisputed unless otherwise noted.

Appellee-Applicants own property located on a .62-acre parcel without any street frontage, at the address of 186 Berlin Street in the Medium Density Residential (MDR) zoning district of the City of Montpelier. The property is located behind the parcel with frontage at 188 Berlin Street. As of mid-2002 the property was improved with an existing house and a 20' x 18' detached garage. Because the property lacks the frontage required under the regulations, it is a pre-existing, non-conforming lot[1] under § 207.H.

In July of 2002, Appellee-Applicants applied for a permit to demolish the old existing garage and to build a new garage somewhat farther from their house and closer to Appellants' property line. The new garage was proposed to measure 24' x 32' in area and 20' in height. It was proposed to be located 23 feet[2] from Appellants' property line and 31½ feet from the nearest 'front' property line with the Hill property (that is, the property line in the direction of Berlin Street). The new garage is shown on the hand-drawn diagram attached to the application as having approximately the same footprint as the former garage, although in fact its footprint is more than twice as large. According to the Administrative Officer's calculations based on information from the City's tax department, the gross floor area of the house is 2580 square feet, including 140 square feet for an enclosed[3] porch.

Under § 501 of the Zoning and Subdivision Regulations, the Administrative Officer is to determine "which permits and review procedures apply to an application according to the provisions of Section 404." Section 404.B requires the Administrative Officer to determine which of the permits and procedures in Articles 2 and 3 apply to a particular application, and to inform the applicant of that determination. Section 404.B also provides for an appeal to the DRB

by any interested party of the Administrative Officer's determination of the permits and procedures required.

Unless the non-conforming use provisions of Article 3 are applicable to this property, the application for an accessory structure to a single-family residence is suitable for review by the Administrative Officer under § 205.D, as accessory to a permitted use under § 503. See § 404.E and its table. That is, unless the non-conforming use provisions of Article 3 are applicable to this property, the application did not require referral for any other type of prior review by the DRB.

In any event, the Administrative Officer approved the application and issued Permit No. 2002-0093. This permit was not appealed and became final. It cannot be challenged, directly or indirectly, in the present appeal, 24 V.S.A. § 4472, and may be enforced according to its terms (unless or until a subsequent permit supersedes it). See, Town of Bennington v. Hanson-Walbridge Funeral Home, Inc., 139 Vt. 288, 293 (1981).

As actually constructed and subsequently surveyed, the new garage was located from 24 feet to 24.2 feet from the side property line, and was located from 30.9 feet to 31 feet from the 'front' property line. As actually constructed, the new garage was approximately 22 feet[4] in height.

After the new garage had been constructed, Appellee-Applicants applied for a permit for the garage at the 22-foot height to which it actually had been constructed. This application has not been provided to the Court in connection with the present motions. In any event, the Administrative Officer's approval of this application in Permit No. 2002-0143 was overturned by the DRB and Permit No. 2002-0143 was voided because the additional height required an additional setback amount, and, as built, the garage extended into the front yard setback by as much as a foot. That is, under § 207.D the two feet of additional height required two feet to be added to each of the setbacks, making the required side setback 22 feet and the required front setback 32 feet. This DRB decision denying the application and voiding the second permit also was not appealed and became final. It cannot be challenged, directly or indirectly, in the present appeal. 24 V.S.A. § 4472.

The action that is the subject of the present appeal was Appellee-Applicants' subsequent application for approval of the new garage at its as-built height of 22 feet, but with an additional proposal to remove enough of the front end of the garage to comply with the 32-foot front setback ruled by the DRB to be required under § 207.D for the additional two feet of height over twenty feet. The Administrative Officer approved the application and issued Permit No. 2003-0043, which was affirmed in the DRB decision on appeal to this Court in the present case.

The only question presented on summary judgment is whether § 815.G of the Zoning and Subdivision Regulations applies to the Administrative Officer's ruling on Appellee-Applicants' most recent application.

In general, administrative officers are constrained by state statute to administer the zoning bylaws or regulations "literally;" the statute states that the administrative officer "shall not have the power to permit any land development which is not in conformance with such bylaws." 24 V.S.A. 4442(a). Even in the area of enforcement in which they might be expected to have some

prosecutorial discretion, their duty to enforce the bylaws is a non-discretionary or ministerial one, In re Fairchild, 159 Vt. 125, 130 (1992), although they have discretion over the nature of the remedy sought. In re Letourneau, 168 Vt. 539, 549 (1998). We must examine the Administrative Officer's functions under the City's Zoning and Subdivision Regulations in light of this constraint.

The Administrative Officer exercises a number of functions unrelated to the issuing of permits: determining which types of permits are required for a particular application, issuing enforcement notices of violation, and determining certification of compliance.

However, with regard to acting on zoning permits, the Administrative Officer may only rule on a zoning permit application without prior referral to the DRB if the proposed use is a permitted use in its zoning district (or for certain other specified decisions such as an application for a lot line adjustment that does not involve creation of an additional lot, or an application for a sign permit outside the Design Control District, or an application for Flood Plain approval). Projects that require conditional use approval, site plan approval, design review, subdivision approval, or planned development approval all must undergo prior review by the DRB. Under the regulations as a whole, the Administrative Officer performs no aesthetic or design review functions to determine whether a proposal is compatible with the 'character of the area' or whether a building, open space or other feature of an application is designed 'in harmony with' the surrounding area or with anything else. That type of discretionary aesthetic or design review function is specifically given to the DRB in the conditional use, site plan review or design review process.

When ruling on whether to approve an accessory structure to a permitted use, § 205.D.1 requires the Administrative Officer to apply "the appropriate dimensional and development standards[5]" (emphasis added), just as approval of a permitted use itself requires the Administrative Officer to apply both the "dimensional requirements (for setbacks, lot coverage, etc.) for the district in which the use is located (refer to Article 2) and any applicable general development review standards (refer to Article 8)." § 503.B. The issue before the Court is whether § 815.G is an 'appropriate' development standard for the Administrative Officer to apply to an application for an accessory structure for a permitted use.

Article 8 of the Zoning and Subdivision Regulations contains development standards which supplement and do not supersede the other requirements of the regulations. They apply to "site plans, subdivisions, planned developments and other applications for development as required by these regulations." Some of them apply by their terms only to DRB review and some to Administrative Officer review; others (like § 815.G) do not specify their applicability.

Zoning ordinances are interpreted using the general rules of statutory construction, looking first to the plain meaning of the ordinance and bearing in mind that the paramount goal is to give effect to the legislative intent. In re Casella Waste Mgmt., Inc., 2003 VT 49, 63. The court is to "read operative sections of a statutory scheme in context and the entire statutory scheme in pari materia," Cushion v. Department of PATH, 174 Vt. 475, 479 (2002) (mem. decision), citing Galkin v. Town of Chester, 168 Vt. 82, 87 (1998), and to give effect to the whole and to every part of the ordinance. In re Stowe Club Highlands, 164 Vt. 272, 279 (1995).

Within Article 8, the context of some of the sections or subsections demonstrate that those sections apply only to DRB review and not to the Administrative Officer's review, while other sections or subsections of Article 8 apply to Administrative Officer decisions. On the one hand, § 814[6] makes a specific reference to the Administrative Officer. On the other hand, § 812 only applies to the DRB's review of conditional use applications, and § 813 only applies to the DRB's review of planned development applications. Within § 825.A, regarding underground utilities, subsection 825.A(1) applies to subdivisions, which undergo DRB review, while subsection 825.A(2) applies to all new construction, presumably even to a single-lot permitted use reviewed only by the Administrative Officer.

Section 815 as a whole only applies to site protection and design; within that section, subsections A through F apply to the site plan review process and other site evaluations of subdivisions and planned developments done by the DRB. Section 815.G requires the decisionmaker to render a discretionary design or aesthetic decision as to whether the proposed development and buildings are "designed in harmony" with the surrounding area. This is the task that the DRB must undertake in site plan review and in subdivision, planned development and conditional use review. On the other hand, the parties have pointed to no other section of the ordinance even arguably giving the Administrative Officer responsibility for making a discretionary design or aesthetic decision. Rather, the Administrative Officer's decisions are more ministerial in nature: to determine whether a proposal meets specific or measurable dimensional measurements or performance standards. If the ordinance does not vest discretionary design or aesthetic decisions in the Administrative Officer explicitly, we cannot do so by inference under § 815.G. It would be entirely incongruous with the ordinance's overall scheme to interpret § 815.G to give the Administrative Officer authority to make the discretionary aesthetic or design decision sought by Appellants.

Accordingly, based on the foregoing, Appellants' Motion for Summary Judgment on Question 1 of the Statement of Questions is DENIED and the City's Motion for Summary Judgment on Question 1 of the Statement of Questions is GRANTED. We will hold a telephone conference on May 13, 2004 (see enclosed notice) to discuss the status of Question 2 of the Statement of Questions, and whether the application should be remanded to the DRB for further consideration of the application consistent with this decision.

Done at Barre, Vermont, this 27th day of April, 2004.

---

Merideth Wright
Environmental Judge

**Footnotes**

1. It appears to the Court that any changes to or enlargements of any buildings on the lot therefore should have been addressed under Article 3 regarding non-conforming uses; however, the DRB did not apply Article 3 but analyzed the Administrative Officer's treatment of the application as an accessory building for a permitted use.

2. The diagram showed a 23-foot setback; the side setback shown on the face of the application was entered as "22+" feet.

3. As defined in Article 13, the measurement method is "from the exterior face of exterior walls," and does not address whether enclosed porches are to be treated as inside or outside the exterior walls. Under §205.D(2)(a), a permitted accessory structure may not exceed 50% of the gross floor area of the primary structure. According to the Administrative Officer's calculations, the gross floor area of the garage as built was 1,120 square feet which is slightly smaller than 50% of the gross floor area of the house, even if the area of its enclosed porch is deducted.

4. The minutes of the November 4, 2002 DRB hearing reflect that Mr. Spaulding asserted that the finished height was 'nearer to 23 feet.' If the actual height of the new garage is disputed, this would be a disputed material fact, as it would determine the amount of additional setback actually required by §207.D, unless the proposal must instead be analyzed under Article 3 relating to non-conforming uses and structures.

5. Under §205.D.1 the Administrative Officer is required to approve the application (that is, the Administrative Officer has no discretion to disapprove) if the use or structure is a permitted use or structure and meets the review standards. We have discussed above the issues regarding whether the property meets the required dimensional standards as to frontage and whether it should instead undergo review under Article 3 as a non-conforming use.

6. The performance standards laid out in §814 are the only Article 8 standards that are not restricted to the permitting process; they apply to all uses whether or not an application is pending. If one of the performance standards were violated by an existing use, the Administrative Officer would have to investigate and take enforcement action regarding the violation. In that context, it is rational for that section to specify that the Administrative Officer must make the same determination for proposed uses.